Harlan **JUSTICE**, Receiver of Crown Insurance Company, Plaintiff,

v.

The **STUYVESANT INSURANCE COM-PANY**, a corporation, Defendant.

Civ. A. No. 2101.

United States District Court
S. D. West Virginia,
Huntington Division.

March 16, 1967.

Philip A. Baer, Baer & Napier, Huntington, W. Va., for plaintiff.

Selden S. McNeer, Jr., Campbell, McNeer, Woods, Bagley & Emerson, Huntington, W. Va., for defendant.

CHRISTIE, District Judge.

This diversity action has been submitted to the Court upon stipulation and concerns the interpretation of a contract of reinsurance [1] executed May 6, 1963, effective March 1, 1963, between Crown Insurance Company, the ceding company, and defendant, The Stuyvesant Insurance Company, the reinsurer. The contract was amended by a "Termination Addendum" dated March 2, 1964, providing that,

"It is mutually understood and agreed this Agreement is to be cancelled as respects losses occurring subsequent to 11:59 P.M., Eastern Standard Time, December 31, 1963.

"In accordance with Article IX, the Reinsurer shall return the unearned portion of premiums ceded hereunder.

"All other terms and conditions of this Agreement remain unchanged."

The amount in dispute is $10,227.12 and involves the manner in which the premiums were to be divided between the respective parties. Solution of the problem calls for a determination and reconciliation of two clauses contained in the reinsurance agreement. One of the clauses is the fourth paragraph of Article IV, which is the basis of defendant's position; the other is contained in the second paragraph of Article IX, which is the basis of plaintiff's position. These Articles, in pertinent part, read:

"ARTICLE IV—Premium

"The Company shall pay to the Reinsurer as premium for this Agreement an amount equal to One Hundred Percent (100%) of the Company's unearned premiums in force as of 12:01 A.M., Eastern Standard Time, March 1, 1963 for limits in excess of the Company's retention as provided in

ARTICLE III above plus One Hundred Percent (100%) of the net premium income of the Company after 12:01 A.M., Eastern Standard Time, March 1, 1963 for limits in excess of the Company's retention as provided in ARTICLE III above, said excess limits premium in both cases having been determined by applying to the premiums charged by the Company for its respective net retained limits, the factors contained in the applicable excess tables used by the Company (not less than the factors used in the manuals of the National Bureau of Casualty Underwriters) for limits in excess of the respective net retained limits.

"The Reinsurer shall allow the Company a commission of Forty Percent (40%) of the net premium ceded above. This commission allowance shall cover all expenses of the Company whatsoever excepting losses and loss adjustment expenses. Return commission shall be allowed on return premiums at the same rate.

"The term 'net premium income' shall mean written premiums less return premiums on policies in force on the effective date of this Agreement and policies, contracts and binders of insurance covering classes of business reinsured hereunder and becoming effective during the period this Agreement remains in force.

"The net reinsurance premium ceded hereunder after deducting the commission provided above shall, however, be subject to an annual minimum premium of Sixty Thousand Dollars ($60,000.00) payable in equal monthly installments of Five Thousand Dollars ($5,000.00) due on the first day of each month beginning with March 1, 1963."

"ARTICLE IX — Commencement and Termination

"This Agreement shall be effective from 12:01 A.M., Eastern Standard

---

1. "Reinsurance" is a contract whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person. 13 Appleman, Ins. L. & P. sec. 7693 (1943).

Time, March 1, 1963, and shall continue in effect until cancelled by the Company or the Reinsurer as hereinafter provided.

"This Agreement may be cancelled by either party by giving sixty (60) days' written notice to the other stating when thereafter cancellation shall be effective. In the event of cancellation, this Agreement shall remain in full force and effect on all policies covered prior to the effective date of such cancellation, until the termination of such policies either by cancellation or natural expiration, but in any event not longer than one (1) year from the effective date of such cancellation. Either party to this Agreement, however, shall have the option of cancelling the Reinsurer's liability on all business in force as of the cancellation date of this Agreement. If the option is exercised, the Reinsurer shall return to the Company the unearned portion of all premiums ceded hereunder."

It has been stipulated that the total earned premium during the contract's ten months' effective period was $66,288.14. The defendant has withheld therefrom $50,000.00 on the theory that it is entitled to this amount as a minimum under the terms of Article IV of the Agreement. On the other hand, plaintiff takes the position that upon defendant's exercise of its option to cancel the Agreement under Article IX, it was required to return to Crown the unearned portion of all premiums ceded, or 40% of the $66,288.14. Thus, it is contended that defendant should have retained $39,772.88 rather than the $50,000.00 withheld and that Crown is entitled to the difference of $10,227.12.

In general the rules which govern the construction of contracts generally and original policies of insurance are applicable to reinsurance contracts. They should, like any other contract, be construed to give effect to the intention of the parties as expressed by the language used, and the language used should be given its usual and ordinary meaning.

The courts should not, under the guise of construction, make a new contract for the parties. A reasonable and sensible construction and one that conforms with the justice of the case and the purpose which the parties sought to accomplish is the goal. However, any ambiguity in the contract will be resolved against the reinsurer unless the language is that of the original insurer. 46 C.J.S. Insurance § 1226 (1946). Unless subject to statutory regulations, the right to recovery of unearned premiums on cancellation of a reinsurance contract is dependent on the terms of the contract. 46 C.J.S., supra, § 1227.

The instant controversy involves no statutory regulations and it is controlled by the contract's terms. Simply stated, the issue is whether, as plaintiff contends, the proviso in Article IX of the Agreement, "If the option is exercised, (to cancel the reinsurer's liability on all business in force as of the cancellation date) the Reinsurer shall return to the Company the unearned portion of all premiums ceded hereunder," has the effect of rendering ineffectual the $60,000.00 minimum annual premium when the reinsurer terminates the agreement after only ten months. If it does not, plaintiff's case must fail.

In the interpretation of a written contract every part of the contract must, if possible, be made to take effect, and every word of it must be made to operate in some shape or other. Williams v. South Penn Oil Co., 52 W.Va. 181, 43 S.E. 214, 60 L.R.A. 795 (1903). Where possible, all parts of the contract will be construed as to give force and validity to all of them, and to all the language used. Rhoades v. Chesapeake & Ohio R. Co., 49 W.Va. 494, 39 S.E. 209, 55 L.R.A. 170 (1901). A desire to effectuate the intentions of the parties creates the necessity of looking to the constituent elements of the contract, elucidating one by the other, and reconciling them, if practicable, to one common intent or design present to the minds of the contracting parties. Mer-

chants Ins. Co. v. Edmond, etc., Co., 17 Grat. (58 Va.) 138.

■ Bearing the foregoing rules of contract construction in mind as well as the policy of construing ambiguity against the reinsurer, particularly in this instance since the reinsurer terminated the Agreement, it is impossible to reconcile plaintiff's position with the expressed intention of the parties.

Plaintiff stresses the fact that the reinsurance premium was subject to an "annual" minimum premium and that, therefore, the parties contemplated that the Agreement would be in effect for a period of years. Admitting this to be the case, the parties nevertheless provided that either might cancel it at any time. More significantly, Article V [2] provides that the reinsurer was to render an accounting at the close of each month and remit to plaintiff any excess over the $5,000.00 deposit premium of the monthly installment of the annual minimum premium which was due the first of each month.

In order to accept plaintiff's interpretation of Article IX, the premium modification provisions of Article IV and the accounting provisions of Article V must be disregarded because the contract was terminated before the expiration of one year. If we were to assume that this same contract had been terminated after thirteen months rather than ten, using plaintiff's theory, the reinsurer, though undeniably entitled to a minimum of $60,000.00 premium for the first twelve months, would be subject to a different standard for the last month.

In our opinion the correct interpretation of the return of unearned premium provision in Article IX, in the event of termination, viewed in light of and reconciled with the explicit annual minimum premium requirements of Article IV and the reporting provisions of Article V, would have reference to a situation wherein the reinsurer's liability is terminated during a month for which the reinsurer had already received all premiums collected by the original insurer. Thus, the unearned premium would mean the pro-rata portion of that month's premium the reinsurer had been paid, but for which it ceased to owe the insurer a corresponding obligation of indemnity in the event of loss.

Such an interpretation gives full force and effect to each of the contract's provisions and at the same time allows them to remain consistent in the event, as occurred in this instance, the right of termination is exercised.

The interpretation plaintiff seeks creates needless ambiguity and inconsistencies between provisions that were intended to be and are clear, explicit and reasonable. Under the previously mentioned rules of construction and in view of what was doubtlessly the intent of the parties at the time of entering into the Agreement, as they expressed it in the contract's provisions, the interpretation plaintiff urges is unpersuasive.

The defendant is accordingly rightfully entitled to retain as its own the money in controversy and the plaintiff's complaint will, therefore, be dismissed.

2. ARTICLE V—Reports and Remittances
"On or before the thirtieth (30th) day after the close of each calendar month the Company shall render to the Reinsurer a statement of its net premium writings (as described in ARTICLE IV) segregated by line of the preceding month on policies covered hereunder. If the net reinsurance premium (after deducting ceding commission) for the respective month being reported is greater than the Five Thousand Dollars ($5,000.00) deposit premium already paid the Reinsurer for that month, the Company shall, within sixty (60) days after the close of the respective month, remit to the Reinsurer the amount of premium shown to be due which is in excess of the Five Thousand Dollars ($5,000.00) deposit already paid.
"On or before the thirtieth (30th) day after the close of each calendar quarter the Company shall render to the Reinsurer a statement of its Contribution to In Force segregated by line of business for the preceding quarter."