Squire E. Parsons

*v.*

Consolidated Gas Supply Corporation

(No. 14329)

Decided July 17, 1979.

*Charles E. Hurt* for appellant.

*Charles E. McCarty* for appellee.

MILLER, JUSTICE:

Consolidated Gas Supply Corporation (herein Consolidated) appeals a default judgment order of the Circuit Court of Roane County. The default order was based on the failure of Consolidated to file a timely answer and on the court's view that Consolidated's motion for leave to file a late answer under Rule 6(b) of the West Virginia Rules of Civil Procedure (herein RCP) was without merit.

Consolidated and its contractor, Carl E. Smith, Inc., were sued by Mr. Squire E. Parsons. The plaintiff Parsons claimed that his house and property had been damaged as a result of blasting, excavation and fill work performed by the contractor in the course of constructing a pipeline for Consolidated.

Suit was filed and served on both defendants on August 31, 1977. The contractor filed a timely answer, denying the allegations of negligence and damages contained in the complaint. Consolidated subsequently filed its late answer, also denying the allegations of the complaint. According to the certificate of service appended to the answer, it was mailed to plaintiff's counsel on November 10, 1977. The answer was not stamped as filed in the circuit clerk's office until November 18, 1977. On November 16, 1977, the plaintiff filed a motion for default judgment. The hearing on the default motion was continued to January 27, 1978, to permit Consolidated to file a motion for relief.

On December 27, 1977, Consolidated filed a motion under Rule 6(b), RCP, for leave to file a late answer. Attached to the motion was an affidavit of George E. Burke, an adjuster for the insurance carrier of the contractor. Mr. Burke stated that he had received the summons and complaint from the contractor and forwarded them to defense counsel. Subsequently, on September 18, 1977, he received a letter from Consolidated requesting that the contractor assume Consolidated's defense in accordance with the provisions of an indemnity clause in the construction contract between the two parties. The adjuster also stated the insurance carrier had to determine whether the indemnity clause required the contractor to assume Consolidated's defense and if the contractor's insurance policy covered the contractor's liability under the indemnity obligation.

The affidavit states that while these matters were being pursued, the adjuster called Frederick R. Brooking, the original attorney representing Consolidated, and received the impression that Mr. Brooking had an agreement with the plaintiff's attorney that the answer could be delayed pending a determination of the indemnity and insurance coverage questions.

The affidavit concludes that the legal questions were resolved on November 9, 1977, and that the contractor's defense attorney was advised to assume the defense for Consolidated, which he did by filing an answer. The adjuster admits that on further investigation, he discovered there was no agreement or understanding between Mr. Brooking and the plaintiff's attorney with regard to extending time for Consolidated to file its answer.

The attorney for Consolidated in these proceedings filed an affidavit in connection with the Rule 6(b) motion to the effect that Consolidated had a meritorious defense to the plaintiff's suit. This defense was predicated on the assertion that the blasting and excavation could not have damaged the plaintiff's property.

The trial court ruled that Consolidated's motion for leave to file a late answer was not based on any good

cause and therefore rejected it, and entered a default judgment against Consolidated. The question of damages was reserved for a later hearing.

# I

## APPEALABILITY

This appeal is from a default order against one of two defendants. The attempted answer was followed by a Rule 6(b) motion to file a later answer. No default order was entered until after the Rule 6(b) motion had been heard. There is a direct relationship between the Rule 6(b) requirement for showing "excusable neglect or unavoidable cause" in order to file late, and a Rule 60(b) motion to obtain relief against a default judgment based on "excusable neglect or unavoidable cause" in failing to file a timely answer.[1] As a result, the federal courts have concluded that where the issue of unavoidable cause or excusable neglect is litigated prior to the entry of a default judgment, and a default judgment is then entered, it is not necessary for the party against whom the default order is entered to move under Rule 60(b) to have it set aside. *See, e.g., SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975); *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975); *Bonanza International, Inc. v. Corceller*, 480 F.2d 613 (5th Cir. 1973), *cert. denied*, 414 U.S. 1073, 38 L. Ed. 2d 479, 94 S.Ct. 587; *McCloskey & Co. v. Eckart*, 164 F.2d 257 (5th Cir. 1947).

The reason is that the grounds of excusable neglect or unavoidable cause have already been asserted and heard by the court, and there is no need to relitigate them by means of a Rule 60(b) motion to vacate. We, therefore, conclude that where, under West Virginia

---

[1]Prior to the June 1, 1978, amendments to the West Virginia Rules of Civil Procedures, Rule 6(b)(2) contained the term "excusable neglect or unavoidable cause." The phrase "unavoidable cause" was not in Rule 6(b)(2) of the Federal Rules, and as a consequence was deleted from our Rule 6(b)(2). For purposes of this decision, we treat the two terms as being synonymous.

Rules of Civil Procedure, a defaulting party has litigated the issue of unavoidable cause or excusable neglect on a Rule 6(b) motion prior to the entry of a default judgment, he need not relitigate this issue by a Rule 60(b) motion upon the entry of the default judgment, but may directly appeal the default judgment.[2]

Despite the similarities between our Rules 54 and 55, RCP, and Rules 54 and 55 of the Federal Rules of Civil Procedure, they differ in several aspects in regard to default judgments arising from a late answer. Our Rule 55 does not permit, as does Federal Rule 55, a default judgment to be entered by the clerk.

Furthermore, Federal Rule 54(b) has been generally interpreted by the federal courts as not to permit an appeal of a default judgment that does not include all of the defendants unless the order contains the Rule 54(b) language that the trial court has found "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." 6 J. Moore, *Federal Practice* § 54.28(2) (1978); 10 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2660 (1973).

The federal practice under Rule 55, in relation to default judgments where there are multiple party defendants, is generally that the default judgment should not be entered where the liability between the defendants may be joint as to the plaintiff. 6 J. Moore, *Federal Practice* § 55.06 (1978); 10 C. Wright & A. Miller, *Federal*

---

[2]Since Rule 60(b) provides grounds for vacating a judgment order other than good cause or excusable neglect, it is conceivable that a party may elect to file a Rule 60(b) motion after entry of the default judgment. Moreover, it is possible that the defaulting party will not be able to fully document these issues at the time he files his Rule 6(b) motion, and may want to use a Rule 60(b) motion after the default order has been entered to provide the court with additional facts. We also recognize that a defaulting party who has not appeared will not receive notice of the default judgment motion, and consequently his only form of relief after its entry will be a Rule 60(b) motion.

*Practice and Procedure: Civil* § 2690 (1973). This is on the theory that appeal is premature in that a defaulting defendant with joint liabiity may be absolved if the plaintiff loses his claim on the merits against the other co-defendants.

This Court has not followed the federal path in the area of the appealability of default judgments for failure to file a timely answer. Our divergence from the federal rule reflects not so much a difference in philosophy, but is based on the difference between our appellate system and the federal appellate system regarding the right to appeal.

The right of appeal to a federal circuit court is absolute; under our system, it is not. The consequence of this difference is that we can be less restrictive in interpreting the finality of an order, since upon preliminary review of the application for appeal we may reject it as being without merit. By stating this policy in the area of default judgments, we do not mean to imply that it applies to other areas. The articulation of this policy is merely a recognition of the practices established by our prior case law.

*Parsons v. McCoy*, _____ W. Va. _____, 202 S.E.2d 632 (1973), is a prime example of the liberality we have accorded appeals from default judgments. There, we reviewed an order setting aside a default judgment obtained by the plaintiff against one of several defendants. We noted the general, if not universal, rule that such orders are not appealable: "There is virtually no other authority in other jurisdictions holding that such an order is appealable." [_____ W. Va. at _____, 202 S.E.2d at 635]. Notwithstanding this overwhelming contrary authority, we permitted the appeal. Although the case involved multiple defendants with a default order only as to one defendant, no discussion was made of the limiting federal doctrine noted above.

In *McDaniel v. Romano*, 155 W. Va. 875, 190 S.E.2d 8 (1972), an appeal was permitted from an order setting

aside the default judgment although the appealability of the order was not discussed. *Parsons v. McCoy, supra,* noted this fact, but recognized that appealability was a jurisdictional issue that the court could have raised on its own motion. It decided not to change the results of *Romano,* nor the earlier case of *Clark v. Lee,* 76 W. Va. 144, 85 S.E. 64 (1915).

From a broader viewpoint, we believe there is much to be gained by all parties to the litigation by having the validity of a default judgment for the failure to file a timely response tested by way of a direct appeal, rather than awaiting the final outcome of the litigation. Judicial economy in the trial of a case dictates this result. A plaintiff armed with a default judgment, which may be of questionable value in light of the unavoidable cause or excusable neglect record, does not gain by having to wait until the entire case is tried before the default judgment can be appealed. The harm is even more aggravated in multi-defendant cases where counterclaims, cross-claims and third-party actions are present involving joint liability by the various parties.

The prompt establishment of the correctness of a default judgment will serve to properly clarify the issues in advance of the actual trial. Since a default judgment, entered under the circumstances of the present case, is immediately appealable, the eight-month appeal period begins upon its entry and the defaulting party will not be able to appeal the ruling after that period. From a practical standpoint, in complex multi-party litigation where the trial occurs long after the default judgment, an appeal of the default judgment after completion of the trial of the remaining defendant will not be possible.

## II

## THE MERITS

Our cases considering the propriety of a default judgment have generally focused on the issue of whether the trial court abused its discretion in entering the default judgment. *See, e.g., Hamilton Watch Co. v. Atlas Contain-*

*er, Inc.*, 156 W. Va. 52, 190 S.E.2d 779 (1972); *Intercity Realty Co. v. Gibson*, 154 W. Va. 369, 175 S.E.2d 452 (1970).

In determining the discretion issue, we have established as a basic policy that cases should be decided on their merits, and consequently default judgments are not favored and a liberal construction should be accorded a Rule 60(b) motion to vacate a default order. *See Syllabus Point 2 of Parsons v. McCoy*, ＿＿ W. Va. ＿＿, 202 S.E.2d 632 (1973), and *Hamilton Watch Co. v. Atlas Container, Inc., supra.*

We are in accord with the federal courts in regard to these fundamental policy considerations. Under both the West Virginia and Federal Rules of Civil Procedure, there is the necessity to show some excusable or unavoidable cause to explain the delay in not answering. Obviously, the stronger the excusable neglect or good cause shown, the more appropriate it is to give relief against the default judgment.

In addition to the foregoing considerations, the federal courts have evolved general guidelines to test the correctness of the refusal to vacate a default order on a Rule 60(b) motion: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party. *See, e.g., Medunic v. Lederer*, 533 F.2d 891 (3rd Cir. 1976); *Tolson v. Hodge*, 411 F.2d 123, 129-31 (4th Cir. 1969); *Radack v. Norwegian American Line Agency, Inc.* 318 F.2d 538 (2d Cir. 1963); *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863 (9th Cir. 1959); *Rooks v. American Brass Co.*, 263 F.2d 166 (6th Cir. 1959); *Barber v. Turberville*, 94 U.S. App. D.C. 335, 218 F.2d 34 (D.C. Cir. 1954); 6 J. Moore, *Federal Practice* § 55.10 (1973).

The federal courts have also given some consideration to whether, prior to the entry of the default judgment, the defaulting party has filed a responsive pleading

even though it is late. In *Bavouset v. Shaw's of San Francisco*, 43 F.R.D. 296, 298 (S.D. Tex. 1967), the court stated the point as follows:

> "Furthermore, when the question is whether to enter a default judgment rather than to vacate an existing default judgment, it is not absolutely necessary that the neglect or oversight on the part of counsel be excusable. Teal v. King Farms Co. [18 F.R.D. 447 (E.D.Pa. 1955)], note 3; See Henry v. Metropolitan Life Ins. Co., 3 F.R.D. 142 (W.D. Va. 1942). Thus, it is necessary for the court to determine if the defendant's default was through excusable neglect."

We consider these rules to be appropriate not only under a Rule 60(b) motion, but also in the context of this case, where the party has filed a Rule 6(b) motion. Applying these various rules to the present case, we find that the defendant answered prior to the time the default judgment was entered. We do not consider the reasons advanced by the defendant for the delay in answering to be exceptionally strong. Of some significance is the fact that Consolidated made a prompt demand on its contractor to assume the defense for Consolidated, causing legitimate confusion as to whether the contractor's insurance carrier was obligated to extend a defense to Consolidated under its policy and whether the policy covered indemnity liability. As noted in 6 Moore's *Federal Practice* § 55.10[2], at 55–245, as well as *Parsons v. McCoy*, ____ W. Va. ____, 202 S.E.2d 632, 636–37 (1973), there is disagreement on the extent to which confusion or delay on the part of insurance carriers in representing the parties constitutes excusable neglect or unavoidable cause.

In *Parsons v. McCoy*, we recognized that, in appropriate circumstances, internal administrative delay may establish excusable neglect. However, by our opinion today, we expand the factors that should be considered in an excusable neglect inquiry.

Here, the period of delay in answering was approximately one and one-half months, which we do not consider extraordinary, and plaintiff does not point to any factor of prejudice by reason of the delay. The answer of Consolidated disputes the material allegations of the plaintiff's complaint, and its defense is essentially that it is not liable. The requirement of a meritorious defense exists.

When we consider the significance of the interests at stake, the complaint seeks monetary damages in the amount of $35,000, which is not an insignificant claim. Generally, other courts have given weight to the amount of monetary damages claimed in deciding whether default judgment should be sustained. *E.g., Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966); *Rooks v. American Brass Co., supra; Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3d Cir. 1951).

Finally, we do not find anything in the record which points to any degree of intransigence on the part of the defaulting party. Were such a factor present, it would weigh heavily against Consolidated.

For the foregoing reasons, we are of the view that the trial court abused its discretion in entering the default order, in the face of the late answer filed by Consolidated and its motion under Rule 6(b), supported by affidavits to demonstrate that it had good cause or excusable neglect for filing the late answer under the standards outlined above. The judgment is therefore reversed and the case remanded.

*Reversed and remanded.*