310 S.E.2d 843

**Raymond A. HINERMAN**

v.

**Sam LEVIN.**

No. 15897.

Supreme Court of Appeals of West Virginia.

Dec. 13, 1983.

William T. Fahey, Barnes, Watson, Cuomo, Hinerman & Fahey, Weirton, for appellee.

David R. Gold, Gold & Khourey, Moundsville, for appellant.

NEELY, Justice:

Sam Levin, the appellant in this action, is a Russian immigrant. He came to the United States in 1975 and moved to Wheeling, West Virginia in April of 1977 to avail himself of employment opportunities as a mining engineer because he had experience in that field.

While working in that capacity, the appellant suffered a heart attack. He filed a workers' compensation claim and was represented on that claim by legal counsel for the United Mine Workers (UMW) of District 6 free of charge. At that time, the UMW's legal counsel in that district was Raymond Hinerman, the appellee in this action. The claim was disputed on several grounds. There was some question concerning whether the appellant had a pre-existing heart condition, whether the present condition arose from and in the course of employment, and there was dispute among

medical experts concerning the severity of the condition. The initial determination was that a twenty percent (20%) award would fully compensate the appellant for his work-related injury.

Appellant protested this rating. While his appeal was being processed, District 6 of the UMW replaced Raymond Hinerman with Craig Broadwater as their legal counsel. Mr. Broadwater suggested to the appellant that he should privately retain the appellee to continue representing him on his appeal because of Mr. Hinerman's prior experience with the complex issues involved in appellant's case.

Mr. Broadwater made clear to the appellant that this private legal representation would not be free, and in fact showed him a copy of the West Virginia statute on attorneys' fees in workers' compensation cases, *W. Va. Code* 23–5–5 [1973]. The appellant then solicited the services of the appellee as his private counsel. There followed oral conversations and a written and signed agreement confirming the terms under which the appellee agreed to act as the appellant's attorney. The agreement into which the two parties entered was a standard contingent fee arrangement which called for the appellee to receive 20% of all compensation awarded for a period of 208 weeks. This was the maximum fee allowed by statute.

While the appeal was being prepared, the appellant moved to Florida. He remained in constant communication with the appellee through collect phone calls to him. After appellee had presented his oral argument before the Workers' Compensation Appeal Board and the expiration of the appeal period without action by the employer, the appeal board ordered an increased rating of total permanent disability. On 8 June 1983, the Commissioner directed payment to the appellant of $19,732.38 as retroactive benefits and a monthly award of $1,162.38.

Without informing the appellee, the appellant had phoned and sent a telegram to the Commissioner revoking her authority to honor appellee's demand for attorneys' fees. When appellee learned of this, he sent a letter dated 8 July 1982 demanding twenty percent (20%) of the award to date. After six weeks of repeated demands for payment pursuant to the contractual arrangement, appellee filed a civil suit on 17 August 1982.

The appellee filed a motion for default judgment in that action on 4 October 1982 with notice to the appellant that a hearing would be held on that motion on 14 October 1982. On 8 October 1982 the court received a letter from a lawyer, David Gold, requesting a continuance and stating that he had just been contacted by the appellant but had not yet agreed to act as counsel for the appellant. At the 14 October 1982 hearing, appellee's motion was granted, but appellant was given an additional ten days to assert bona fide defenses. When appellant did not exercise this option, a default judgment as to liability was entered on 27 October 1982.

On 29 October 1982, Mr. Gold, who is currently the appellant's counsel, sent a letter to the court seeking another continuance while he conferred with the appellant's Florida counsel. Meanwhile, appellee gave notice to all the parties of a hearing set for 16 November 1982 for an attachment. On 4 November 1982, the clerk of the circuit court received a letter of general denial from the appellant; but the court has since noted that it did not see a copy of this letter nor was a copy sent to appellee. On 8 November 1982, appellant's counsel advised the court by letter that he had not yet concluded arrangements with the appellant concerning his employment. At the 16 November 1982 hearing, appellant's written motion to set aside default judgment was delivered by another attorney, Arch Riley, Jr.; the motion was considered and denied by the court. Finally, on 3 December 1982, Mr. Gold filed another motion to vacate default judgment giving notice of a hearing to be held on 16 December 1982. On that date, the trial court conducted a full hearing and issued findings of fact and conclusions of law in a memorandum of opinion, and entered an order denying the motion.

Appellant filed a petition seeking review by this court on 17 May 1983. He alleged four errors: 1) the trial court lacked personal jurisdiction over the appellant; 2) the trial court erred in granting default judgment; 3) the trial court erred in failing to vacate the default judgment and in allowing appellee's monetary recovery; and 4) the trial court erred in allowing appellee to recover an attorney's fee in excess of the statutory maximum set in *W. Va. Code* 23–5–5 [1973]. We granted the petition and now find for the appellee on the first three issues and for the appellant on the fourth issue.

## I

■ Because the due process clause of the Fourteenth Amendment places a constitutional limitation on the power of a state court to render a valid judgment in a case in which it does not have *in personam* jurisdiction, *Kulko v. California Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978), we will first address the issue of this court's personal jurisdiction over the appellant. There are two prongs to the due process standard: first, the defendant must be given adequate notice of the suit, *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); and second, the defendant must have sufficient "minimum contact with the state which seeks to exercise personal jurisdiction over him." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The appellant in this case received personal notice of the suit and does not claim that notice was inadequate; consequently, we will limit our discussion to the minimum contact issue.

This court set out the proper test for sufficient contact to establish personal jurisdiction in the Syllabus of *S.R. v. City of Fairmont*, 167 W.Va. 880, 280 S.E.2d 712 (1981):

The standard of jurisdictional due process is that a foreign corporation must have such minimum contact with the state of the forum that the maintenance of an action in the forum does not offend

traditional notions of fair play and substantial justice.

Quoting Syl. Pt. 1 *Hodge v. Sand Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966). In *Fairmont*, we went on to note that the thrust of Supreme Court decisions in this area was that states would be deemed to have personal jurisdiction if this was reasonable in light of several factors: 1) the burden on the defendant; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief at least when that interest is not adequately protected by the plaintiff's power to choose the forum; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental substantive social policies. *S.R. v. City of Fairmont, supra. See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ In light of the factors listed above, we hold that the appellant had sufficient contact with the State of West Virginia to justify a West Virginia court's asserting personal jurisdiction over him. Mr. Levin was a resident of the State of West Virginia for a substantial period. He was employed in this state. He entered into a written contract in West Virginia, and the services for which he bargained were provided in West Virginia. Most importantly, he is currently the beneficiary of an award from a public fund of the State of West Virginia, and it is that award which is the catalyst for this suit.

■ The significance of this last contact with West Virginia cannot easily be overstated. As the Supreme Court noted in *International Shoe Co., supra:*

[T]o the extent that a [defendant] exercises the privilege of conducting activities within a state, it enjoys the benefits and protections of the laws of that state. The exercise of that privilege may give rise to obligations, and so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the [defendant]

to respond to a suit brought to enforce them can, in most instances hardly be undue.

*Id.* 326 U.S. at 319, 66 S.Ct. at 160. The appellant has sought the benefit of legal and economic protection afforded by the State of West Virginia. He cannot now assert that he sought and received those benefits without contemplating acceptance of reciprocal responsibility for them.

■ West Virginia has a substantial interest in assuring that its citizens are properly compensated for services rendered pursuant to contracts entered into in this state. Moreover, if West Virginia cannot assure attorneys who represent claimants seeking publicly administered funds that they will be paid for their professional services, there is a substantial danger that those with meritorious claims will not be able to find competent legal counsel to represent them. For all of these reasons, we rule that West Virginia has personal jurisdiction over workers' compensation claimants when actions are brought against them pursuant to contracts entered into in this state seeking payment for professional services in connection with their claims before the West Virginia Workers' Compensation Fund. *See, W.Va.Code* 56–3–33 [1979].

## II

Appellant argues that the court below erred in rendering a default judgment against him and then refusing to vacate that judgment. The appellant asserts that his failure to answer appellee's pleading in this case was excusable neglect because he was acting *pro se,* and that his 1 November 1982 letter to the clerk of the court served as an answer sufficient to preclude the default judgment.

■ We recognize at the outset that this court has established as a basic policy that cases should be decided on their merits, and that, therefore, default judgments are not favored. *See* syl. pt. 2 of *Parsons v. McCoy,* 157 W.Va. 183, 202 S.E.2d 632 (1973). We would also note, however, that "[o]ur cases considering the propriety of a default judgment have generally focused on the issue of whether the trial court abused its discretion in entering the default judgment." *Parsons v. Consolidated Gas Supply,* 163 W.Va. 464, 256 S.E.2d 758, 762 (1979). Therefore, although this court is quite willing to review default judgments and to overturn them in cases where good cause is shown, a demonstration of such good cause is a necessary predicate to our overruling a lower court's exercise of discretion.

■ In view of the factual record before us, we do not find appellant's arguments that a default judgment was improper persuasive. Regarding appellant's assertion that he was acting *pro se,* the Court cannot help but note that if anything appellant suffered from an excess of legal advice. At various times in the preparation of his defense in this action, he sought and received counsel from the UMW's district representative, his current counsel in this case, and a Florida lawyer. Although none of those individuals was formally acting as his lawyer at the time his reply was required, it strains credulity to ask us to believe that he was unaware of the need to file a legally sufficient reply.

Beyond that factual consideration, however, we note that the court below evidenced a continuing willingness to hear bona fide defenses even after the initial default judgment was rendered. Although the appellant's letter to the clerk was legally insufficient as an answer to appellee's complaint both because it was not served properly on the parties and because it did not respond to appellee's allegations with sufficient specificity, the court below granted a ten-day extension for the appellant to present bona fide defenses before the default judgment was finally entered. The appellant's failure to do so can be characterized only as intransigence. In *Parsons v. Consolidated Gas Supply Corporation,* 163 W.Va. 464, 256 S.E.2d 758, 763 (1979) this court noted that any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment. In light of all of these factors, we believe that the court below

was well within its discretion in granting a default judgment.

### III

Appellant next assigns as error the trial court's refusal to vacate the default judgment and its willingness to allow the appellee to obtain a lien against the remaining portion of the appellant's recovery from the fund. Before turning to the merits of this assignment, however, it is important to point out the appropriate standard of review for such a claim. The trial court's final memorandum of findings of fact and law was made pursuant to a Rule 60(b) motion.[1] In Syl. Pt. 3 of *Gaines v. Drainer*, 169 W.Va. 547, 289 S.E.2d 184 (1982) we held:

■ An appeal on the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order. Quoting syl. pt. 3, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

■ Therefore, the standard of review in the case *sub judice* requires that the court's ruling on the motion be allowed to stand unless it constitutes a clear abuse of discretion. *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970).

■ In *Parsons, supra*, this court appropriately defined the factors to be considered in appellate review of a Rule 60(b) motion. Four factors were listed: 1) the degree of prejudice suffered by the plaintiff due to the defaulting party's delay; 2) the presence of material issues of fact and meritorious defenses; 3) the significance of the interests at stake; and 4) the degree of intransigence on the part of the defaulting party. With these factors in mind, we do not find that the court below abused its discretion in this case; in fact, the Memorandum of Opinion makes clear that the court adequately weighed the factors that we have articulated.

■ Appellant's delay in responding to appellee's pleading created a possibility of serious prejudice to the appellee. Appellant was no longer a resident of this state and satisfying a judgment against him would be difficult; appellant admitted that he was spending all of the compensation award and, therefore, the possibility that he would be judgment-proof at a later time was a real one. Finally, the appellant's questionable health was yet another reason why delay in doing justice raised the spector that justice would ultimately be denied.

As we have already indicated, the appellant never presented the court with serious factual issues or meritorious defenses that would have required a full trial. Instead, despite numerous opportunities to make his case appellant contented himself with general statements that he did not believe he owed anything to appellee. Once again, as the memorandum of opinion indicated, there is no reason to believe that a result

---

1. Rule 60(b) of the West Virginia Rules of Civil Procedure states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

different from the one obtained would have followed from a full trial.

Appellee had a significant interest in this litigation. Because of the large award the appellant had obtained through the professional efforts of appellee, the appellee's default judgment was for $12,088.54—a substantial sum. We noted in *Parsons, supra* that the size of a monetary award was relevant in deciding whether the complaining party had a sufficiently significant interest to justify a default judgment. *Id.,* 163 W.Va. at 473, 256 S.E.2d at 763.

Appellant's failure to answer the pleading of appellee in timely fashion, his failure to be responsive to the initiatives of the court, and his generally obstreperous approach to this matter indicate an intransigent posture that made the entering of a default judgment both necessary and inevitable.[2]

Finally appellant argues that the judgment against him is incorrect because the award to appellee is disproportionate to the services rendered. In essence, appellant argues that his contract for services with appellee was unconscionable. Once again, we are unable to agree.

Initially, it should be noted that appellee's fee was set in accordance with the statutory limit. There must be a strong presumption that the state legislature has not given its imprimatur to unconscionable attorneys' fees. Second, the doctrine of unconscionability is generally applied to situations of grossly unequal bargaining power. In this case the appellant had the option of having his appeal handled by UMW counsel free of charge. He chose to pay the appellee because he believed appellee would do a better job. In fact, appellant received a very large award in a difficult case. It is axiomatic in contract law that one must look at the position of the parties at the time the bargain was entered to determine whether the bargain was fair. In this case, even if we look at

the ultimate result of the agreement, we cannot say that the appellant was unfairly treated.

Appellant argues that a fee of over $12,000 is excessive for the processing of a one-day appeal. This assertion is an attack on the contingency fee system. Without the possibility of contingent fees many indigent claimants would be unable to obtain benefits to which they are entitled. The appellant may not have been able to pay the appellee's hourly fees if the appeal had been unsuccessful. Therefore, appellee may not have been willing to provide his effective assistance without a contingent fee arrangement. Appellant now challenges the size of the fee precisely because the appellee was highly successful in his representation of him. Although contingent fees may raise ethical issues in some cases, this was not such a case.

For all of the reasons given above, we do not believe that the lower court abused its discretion in refusing to overturn its default judgment.

IV

Appellant sought and received legal representation from appellee on two separate occasions. The first instance revolved around appellant's initial claim for workers' compensation benefits, and because appellee was at that time local counsel for the UMW, appellee's fees were paid by the union at that time. On the second occasion, the appellant who was unsatisfied with his initial award independently sought the appellee as his personal lawyer. Appellant on appeal negotiated a personal services contract that granted to the appellee a fee in accordance with the allowable statutory maximum fee.

Appellant argues that the combination of the two fees earned by appellee exceeds the statutory maximum set out in *W.Va. Code* 23–5–5 [1973].[3] The statute bars an

---

**2.** With regard to appellant's attitude toward the seriousness of this litigation, it is instructive to note his testimony suggesting that if he owed anything to appellee, his debt for one day's work would be more than paid by "gasoline,

hotel, maybe bar, restaurant, maybe lady ...." (R. at 194).

**3.** *W.Va.Code* 23–5–5 states in its entirety:

attorneys' fee in excess of twenty percent of "any award granted" and we are therefore in agreement with the appellant on this issue. Despite the fact that appellee represented the appellant pursuant to two separate contracts, all of his actions on the part of appellant were aimed toward the procurement of a single award. We rule that the $600 appellee received from the UMW should be deducted from his recovery from the appellant pursuant to their private contract.

We do not believe that this holding directly overrules the court below. In its order of 16 November 1982, that court directed the appellant employer, Consolidation Coal Company, and the Employers' Service Company to direct the appellant's entire benefit check to the appellee "until such time as the plaintiff Raymond A. Hinerman has collected the amount of twenty percent (20%) of all benefits heretofore awarded to Sam Levin, plus costs ...." That order is not clear concerning whether appellee's prior fee should be included in determining when the contract payment has been met. We simply clarify that aspect of the Order.

We believe that the same ambiguity that characterized the court's order on this point extends to the contract itself. Therefore, although we agree with appellant that appellee's fee should be controlled by the statute, we do not believe that this judgment renders the entire contract void as against public policy. We note that where possible courts construe contracts in such a way as to give them force and validity, and not in such a way as to frustrate the substantial will of the parties. *Justice v. Stuyvesant Insurance Co.*, 265 F.Supp. 63 (S.D.W.Va.1967).

Finally, we cannot agree with appellee's assertion that the operation of this statutory limitation on fees unduly regulates the practice of law or that it will lead to a situation in which claimants will be unable to find able lawyers to represent them. The workers' compensation system as a whole is a creature of statute, and the legislature has an interest in assuring that its statutory aim of compensating the injured is not frustrated by lawyers who siphon off excessive portions of the award as their fees. This is not to say that the legislature has carte blanche to set a cap on such fees; however, the case before us does not support an argument that attorneys who handle workers' compensation cases are impecunious. In fact, our observation of the system as a whole simply does not lend credence to such a claim.

Therefore, for all of the reasons given above, we uphold the default judgment entered by the trial court with the clarification that the attorney's fees paid by the UMW should be deducted from the appellant's contractual obligation.

Affirmed.

On or after the first day of July, one thousand nine hundred seventy-five, no attorney's fee in excess of twenty percent of any award granted shall be charged or received by an attorney for a claimant or dependent. In no case shall the fee received by the attorney of such claimant or dependent be in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks. This section shall not apply to any contract for legal services made prior to the first day of July, one thousand nine hundred seventy-five: Provided, that the interest on disability or dependent benefits as provided for in this chapter shall not be considered as part of the award in determining any such attorney's fee. However, any contract entered into in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks, as herein provided, shall be unlawful and unenforceable as contrary to the public policy of this State and any fee charged or received by an attorney subject to disciplinary action.