624 S.E.2d 594

**REALCO LIMITED LIABILITY CO., a successor and interest to Realmark Development, Inc., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**APEX RESTAURANTS, INC., Defendant Below, Appellant.**

and

**Realco Limited Liability Co., a successor and interest to Realmark Development, Inc., a West Virginia Corporation, Plaintiff Below, Appellee**

v.

**George Steven Shawkey, Defendant Below, Appellant**

No. 32564.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2005.

Decided Dec. 2, 2005.

Dissenting Opinion of Chief Justice Albright Dec. 7, 2005.

Timothy J. LaFon, Esq., Ciccarello, Del Giudice & LaFon, Charleston, for Appellee.

Harry G. Shaffer, III, Esq., H. Jerome Sparks, Esq., Shaffer & Shaffer, Madison, for Appellant.

PER CURIAM:

Appellant appeals from the trial court's order denying relief from a default judgment rendered against the appellant for delinquent payments under a lease agreement. For the reasons stated herein we affirm the rulings of the trial court.

I.

On April 22, 1996, George Steven Shawkey ("Shawkey") incorporated Apex Restaurants Corporation ("Apex–California") under the laws of the State of California. Shawkey was the president and owner of 100% of the stock. In the same year Shawkey formed a business relationship with Emre Sarihan ("Sarihan") who expressed a desire to expand his existing bar and restaurant business. Prior to February 6, 1997, Shawkey sold his interest in Apex–California to Sarihan. Shawkey was then hired by Sarihan to continue to function as Director of Operations and Real Estate for Apex–California.

In his capacity as Director of Operations and Real Estate for Apex–California, Shawkey entered into negotiations with Phil Shaffer, a representative of Realmark Developments, Inc. ("Realmark"), to lease property in Charleston, West Virginia. The property under consideration for lease was to be the location of a restaurant and bar of Apex–California. As a result of the negotiations, on February 6, 1997, Shawkey executed a lease with Realmark on behalf of Apex–California for a building in Charleston.[1]

After executing the lease, Shawkey informed Sarihan that the lease had been executed, only to be told by Sarihan that he could not commit to the lease because of financial difficulties. As a result of Sarihan's refusal to honor the lease, Shawkey severed his relationship with Apex–California. Shawkey then informed Realmark that Apex–California did not intend to fulfill the lease that Shawkey had executed on behalf of Apex–California. Shawkey further advised Phil Shaffer of Realmark that he believed he could, on his own, successfully operate a restaurant on the same property for which he had negotiated a lease on behalf of Apex–California.

Shawkey then incorporated Apex Restaurants, Inc. ("Apex–WV") under the laws of West Virginia on February 7, 1997. Shawkey claims that he informed Phil Shaffer that he would prefer to pay rent on a month-to-month basis. Shawkey never signed a separate lease with Realmark under the name of

---

1. The stated term of the written lease was from February 4, 1997, ending on February 3, 2007.

Apex Restaurants, Inc. (Apex–WV). Nevertheless, the Apex–California lease that was signed by Shawkey on February 6 was, for some reason, not signed on behalf of Realmark until February 12, 1997. This was several days after Shawkey had apparently reached an agreement with Realmark on his own. Shawkey began operating Apex–WV as Shooters Restaurant. After a period of time the restaurant closed.

On May 7, 1999, Realco Limited Liability Company ("Realco"), successor to Realmark, filed a complaint against Apex–WV for delinquent lease payments. The lease that names Apex Restaurants Corporation (Apex–California) was attached to the complaint as an exhibit. Apex–WV never answered the complaint, and nearly one year later Realco filed a motion for entry of default. On April 6, 2000, default judgment was entered in favor of Realco in the amount of $47,381.48.[2] Approximately one year and three months after the entry of the default judgment, on July 3, 2001, Apex–WV filed a motion to set aside judgment. On June 23, 2004, three years later, the circuit court entered an order denying the motion to set aside judgment. It is from the June 23, 2004 order that appellant appeals.

## II.

We review default judgments under an abuse of discretion standard. In Syllabus Point 3 of *Hinerman v. Levin,* 172 W.Va. 777, 310 S.E.2d 843 (1983), we held:

Appellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment.

*In accord,* Syllabus Point 1, *Cales v. Wills,* 212 W.Va. 232, 569 S.E.2d 479 (2002).

In Syllabus Point 3 of *Parsons v. Consolidated Gas Supply Corporation,* 163 W.Va. 464, 256 S.E.2d 758 (1979) we held:

In determining whether a default judgment should be entered in the face of a Rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.

We also said in *Parsons* that "there is the necessity to show some excusable or unavoidable cause to explain the delay in answering." 163 W.Va. at 471, 256 S.E.2d at 762.

We will analyze separately each of the *Parsons* factors:

1. The degree of prejudice: The initial inquiry under *Parsons* is a determination of the degree of prejudice to Realco if the default as to liability is vacated. While this point is not argued specifically, we find nothing in the record to indicate that Realco would be prejudiced by vacation of the default judgment.

2. The presence of material issues of fact and meritorious defenses: The second *Parsons* factor is whether appellant has shown the existence of material issues of fact. In examining this factor we need only determine whether "there is ... reason to believe that a result different from the one obtained would have followed from a full trial." *Hinerman,* 172 W.Va. at 783–84, 310 S.E.2d at 850. Appellant essentially asserts that the judgment should not be allowed to stand because appellant is not the party named in the lease agreement that was attached to the complaint. Although we make no comment on whether Apex Restaurants, Inc. (Apex–WV) could prevail on its defenses, we find that the defense could satisfy the second *Parsons* requirement.

3. The significance of the interests at stake: Under the third *Parsons* factor we examine the interests at stake in the litigation. The default judgment in the instant case was in the amount of $47,381.48. In *Parsons* the amount of monetary damages was $35,000.00. The amount in *Parsons* was

2. On May 25, 2000, a separate complaint was filed by Realco against Shawkey, individually, claiming that the corporate veil should be pierced and that Shawkey should be held personally liable for Apex Restaurants, Inc.'s debts. The later-filed case against Shawkey was consolidated with the instant case and is still pending in the circuit court.

considered to be "not insignificant." This case is quite similar to *Parsons*.

4. The degree of intransigence by the defaulting party: Under *Parsons'* fourth factor, we examine the degree of intransigence by Apex Restaurants, Inc. "In *Parsons* ... this court noted that any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment." *Hinerman*, 172 W.Va. at 782, 310 S.E.2d at 849.

The record in this case shows that the complaint against Apex Restaurants, Inc. (Apex–WV) was filed on May 7, 1999, and that on May 17, 1999, the Secretary of State accepted service on behalf of Apex Restaurants, Inc. There is nothing in the record to suggest that Shawkey did not have actual notice of the filing of the original suit. Default judgment was entered pursuant to a motion on April 6, 2000, approximately eleven months after the filing of the complaint.

The intransigence of the appellant is exhibited by Shawkey's complete disregard for the pending action for the approximately eleven-month period prior to entry of the default judgment order. And, the appellant's intransigence is exacerbated by appellant's continued disregard of the default judgment in the instant case for approximately eleven more months after he obtained counsel in the second case that was filed on May 22, 2000. *See supra*, footnote 2.

It further appears from the record that the appellant has challenged the default judgment outside the time period prescribed by Rule 60(b) of the *West Virginia Rules of Civil Procedure* (1998).[3] Apex Restaurants, Inc. (Apex–WV) filed its motion to set aside the default judgment on July 3, 2001, approximately one year and three months after the default judgment was entered. The only reason asserted by the appellant for failing to answer the complaint is stated in appellant's reply brief and is not supported by evidence. In the reply brief the reason offered by the appellant is that Shawkey is not an attorney and that he believed consultation with an attorney was unnecessary. We find that even if the assertions were supported by the evidence, they are not persuasive. We also note that Shawkey did obtain counsel on or before June 19, 2000, when he filed a motion to dismiss in the companion case, and yet it was not until almost one year later that appellant filed the motion to set aside judgment rendered against Apex Restaurants, Inc. (Apex–WV). We find this degree of intransigence to be significant.

5. The existence of excusable or avoidable cause: Under the final consideration required by *Parsons*, a defaulting party must show some excusable or unavoidable cause to explain the delay in answering the complaint. As previously stated, the scant record before us sheds little light on this issue. We find the assertion made by counsel in his reply brief to be insufficient in this regard. There-

---

**3.** *W.Va.R.Civ.P.* Rule 60(b) [1998] reads as follows:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

fore, we find no merit in the appellant's position as to this final *Parsons* factor.

In weighing the *Parsons* factors, we believe that the record does not support a finding that undue prejudice would result against Realco by setting aside the default judgment. We have also determined that the appellant may have defenses which have merit, and that the interests at stake are significant. These findings, however, must be weighed against Apex Restaurants, Inc.'s intransigence and its failure to present any excusable or unavoidable cause for not timely filing any responsive pleadings.

We believe that the proper balance in this case requires the Court to affirm the trial court's denial of appellant's motion to set aside judgment of default. We said in *Hinerman,* 172 W.Va. at 782, 310 S.E.2d at 848, that "although this court is quite willing to review default judgments and to overturn them in cases where good cause is shown, a demonstration of such good cause is a necessary predicate to our overruling a lower court's exercise of discretion."

We also note that Rule 60(b) requires the filing on a motion to set aside judgment within a reasonable time not to exceed one year. *See supra,* footnote 3. In the instant case Apex Restaurants, Inc. (Apex–WV) filed its motion well beyond the one-year time period. The Rule 60(b) motion was filed only after Shawkey had been sued personally in a second lawsuit by Realco in an attempt to make Shawkey personally liable for the debts of Apex Restaurants, Inc. under the lease. We also find that the filing of the motion to set aside judgment was not within a reasonable time as required by Rule 60(b).

### III.

Based on the foregoing we find the circuit court did not abuse its discretion in denying Apex Restaurants, Inc.'s motion to set aside

judgment, and, therefore, we affirm the ruling of the circuit court.[4]

Affirmed.

Chief Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

ALBRIGHT, Chief Justice, dissenting.
(Filed Dec. 7, 2005)

I must dissent from this Court's refusal to set aside a default judgment where the facts readily reveal that the majority ignored time-honored legal principles which prefer a judgment on the merits to resolution of a dispute by default judgment. *See* Syl. Pt. 2, *Hamilton Watch Co. v. Atlas Container, Inc.,* 156 W.Va. 52, 190 S.E.2d 779 (1972); Syl. Pt. 2, *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972).

The lower court's refusal to set aside the default judgment was a clear abuse of discretion. Syllabus point three of *Parsons v. Consolidated Gas Supply Corporation,* 163 W.Va. 464, 256 S.E.2d 758 (1979), our leading case on the consideration of default judgments, sets forth the test for sustaining or setting aside such judgments. Of particular relevance is the part of the *Parsons* test which requires a court to examine "the presence of material issues of fact and meritorious defenses" which would weigh against allowing the default judgment to stand. *Id.*

The record before us clearly demonstrates that Realco obtained judgment on a complaint filed against and served upon Apex Restaurants, Inc., a West Virginia corporation (hereinafter referred to as "Apex West Virginia"), to obtain delinquent lease payments arising under a written ten-year lease. The lease in question was attached to the motion for default judgment. Apex West Virginia argued below, as it did before this Court, that it was not a party to the lease and asserts that it was not incorporated until after the date the lease was signed. It is hard to imagine more material issues of fact and law than whether the claim stated against a defendant sought relief against the

4. We note that the trial court's order ruling on the motion to set aside the default judgment does not contain specific findings of fact and conclusions of law with respect to the factors which must be considered under *Parsons v. Consolidat-*

*ed Gas Supply Corporation,* 163 W.Va. 464, 256 S.E.2d 758 (1979). We take this opportunity to encourage trial courts, when ruling upon Rule 60(b) motions to set aside default judgments, to address these factors in detail in their orders.

wrong party with respect to a transaction for which that party was not legally obligated. The lower court jumped over outstanding, material questions of fact—upon which the defendant was entitled to a jury trial—to draw conclusions of law unfavorable to the defendant not necessarily justified by the facts. It was not properly within this Court's province or that of the trial court to decide the factual questions raised. Rather, it was this Court's responsibility to recognize that material issues of facts presented potentially meritorious defenses warranting that the default judgment be set aside.

This Court has long held that "courts should not set aside default judgments ... without good cause." Syl. Pt. 2, in part, *McDaniel v. Romano*, 155 W.Va. 875, 190 S.E.2d 8 (1972). However, it *should* go without saying that whether a default judgment was entered against the wrong party with respect to a transaction for which that party may not have been obligated constitutes good cause to set aside the judgment.

Accordingly, I dissent from the conclusion reached by the majority.