# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

FILED

**March 20, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-ICA-173

_____

STEAK ESCAPE OF KANAWHA CITY II, LLC D/B/A STEAK ESCAPE,
and JOSH MACLEERY,
Defendants Below, Petitioners,

v.

JASON HUDSON,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County

Honorable Jennifer F. Bailey, Judge

Civil Action No. CC-20-2022-C-706

AFFIRMED, in part, REVERSED, in part, and REMANDED
_____

Submitted: February 5, 2025
Filed: March 20, 2025

Andrew F. Maunz, Esq.
Jackson Lewis P.C
Pittsburgh, Pennsylvania
Counsel for Petitioners

Rodney A. Smith, Esq.
M. Alex Urban, Esq.
Rod Smith Law PLLC
Charleston, West Virginia

Robert P. Lorea, Esq.
Lorea Law Office PLLC
Charleston, West Virginia
Counsel for Respondent

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioners, Steak Escape of Kanawha City II, LLC d/b/a Steak Escape ("Steak Escape") and Josh Macleery (collectively "Petitioners"), appeal the March 21, 2024, judgment order, and the September 18, 2023, order of the Circuit Court of Kanawha County, upholding the default judgment against Petitioners[1] and the award of monetary damages against them totaling $132,704.80.[2] On appeal, Petitioners argue that the circuit court erred in upholding the default judgment against Steak Escape, as it was not properly served with a copy of Respondent Jason Hudson's ("Mr. Hudson") underlying complaint.[3] Further, Petitioners contend the circuit court erred in denying their motion to set aside the default judgment for good cause based on the factors contained in *Parsons v. Consolidated Gas Supply Corp.,* 163 W. Va. 464, 256 S.E.2d 758 (1979); that the punitive damage award against them was improper; and that the award of attorney's fees to Mr. Hudson was not reasonable.

After our review of the record, we find that Steak Escape was not properly served with a copy of Mr. Hudson's underlying complaint. However, we find that the

---

[1] In its September 18, 2023, order, the circuit court set aside default judgment against Defendant Michael Hill, who is not party to this appeal.

[2] The damages awarded by the circuit court included $15,400 in compensatory damages, $50,000 in punitive damages, and $67,304.80 in attorney's fees.

[3] On appeal, Plaintiffs do not allege that personal service upon Mr. Macleery was defective.

1

circuit court did not abuse its discretion in upholding the default judgment against Mr. Macleery, nor did the circuit court abuse its discretion in awarding punitive damages and attorney fees against Mr. Macleery. Therefore, we reverse the circuit court's award of default judgment as to Steak Escape; affirm the circuit court's award of default judgment, punitive damages, and attorney's fees as to Mr. Hudson's underlying claims against Mr. Macleery; and remand the case to circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2022, Mr. Hudson filed his underlying complaint in the Circuit Court of Kanawha County, alleging he was wrongfully terminated from his job at Steak Escape after he was diagnosed with ulnar palsy for which he sought workplace accommodations and time off for a neurologist appointment. Mr. Hudson further alleged claims of discrimination based upon an actual or perceived disability, failure to accommodate, and reprisal in violation of the West Virginia Human Rights Act ("WVHRA"). In his underlying complaint, Mr. Hudson named Steak Escape, Josh Macleery (Steak Escape's general manager) and Michael Hill (Steak Escape's shift supervisor) as defendants.

On September 8, 2022, Mr. Macleery was personally served a packet of documents, including the summons and Mr. Hudson's complaint ("summons and complaint") naming him as a defendant, at the Steak Escape franchise located at 3700

MacCorkle Avenue in Charleston by a Kanawha County Deputy Sheriff. When questioned by the Deputy Sheriff about service of Steak Escape, Mr. Macleery indicated that the correct address for service of Steak Escape was in Ohio. The Deputy Sheriff did not leave the summons and complaint directed to Steak Escape with Mr. Macleery; however, the Deputy Sheriff did leave the summons and complaint for Michael Hill with Mr. Macleery.

Mr. Hudson also mailed a copy of the summons and complaint directed to Steak Escape to the West Virginia Secretary of State ("WVSOS"). The WVSOS received the mailing on September 12, 2022, and attempted to forward the summons and complaint to Steak Escape's designated agent, John D. Smallridge, Jr., at the address for service of process designated by Steak Escape.[4] After three attempts by the United States Postal Service, the forwarded summons and complaint were returned to the WVSOS as "undeliverable as addressed."

On September 26, 2022, Mr. Hudson's counsel received a collection of documents, postmarked on September 22, 2022, from Steak Escape's Columbus, Ohio office. Among other things, this collection of documents included a joint response to plaintiff's interrogatories from Mr. Macleery and Mr. Hill. However, no answer, or any responsive or other pleading, was filed on behalf of Steak Escape or Messrs. Macleery or

---

[4] The address designated by Steak Escape in their WVSOS filing is 1013 ½ Quarrier Street, Charleston, WV 25301.

3

Hill. Further, no attorney filed a notice of appearance on behalf of Steak Escape or Messrs. Macleery or Hill in the underlying matter.

On December 19, 2022, Mr. Hudson filed a motion for default judgment, which was mailed to the Petitioners' Charleston, West Virginia location. On January 11, 2023, the circuit court entered its order finding Petitioners in default due to their failure to file an answer, notice of appearance, or response to the motion for default judgment. On January 20, 2023, Mr. Hudson served a notice of the hearing on damages, scheduled for March 3, 2023, by mailing copies of the notice to Messrs. Macleery and Hill, and Steak Escape at both Steak Escape's principal place of business in Charleston, West Virginia, and the corporate office in Columbus, Ohio. Further, on that same day, Mr. Hudson's counsel personally contacted Mr. Macleery at the Steak Escape location in Charleston, West Virginia, location and informed him of the hearing.

On March 1, 2023, Petitioners, through counsel, filed an emergency motion to set aside the default judgment. The circuit court held a hearing on that motion on March 3, 2023. At the conclusion of the hearing, the circuit court ordered Mr. Hudson to conduct limited depositions of Petitioners. On June 23, 2023, the circuit court held another hearing and further ordered Steak Escape to provide evidence to the court regarding its ability to receive mail sent to the address on file at the WVSOS.

The June 23, 2023, hearing was held to address both Mr. Hudson's damages and Petitioners' motion to set aside the default judgment. Following the hearing, the circuit court entered its September 18, 2023, order denying the motion to set aside the default judgment and set an evidentiary hearing on damages. On October 2, 2023, the circuit court conducted an evidentiary hearing on damages. On March 21, 2024, the circuit court entered its judgment order granting Mr. Hudson compensatory damages, punitive damages, and attorney's fees. It is from the September 18, 2023, and March 21, 2024, orders that this appeal arises.

## II. STANDARD OF REVIEW

We review default judgments under an abuse of discretion standard. *See Groves v. Roy G. Hildreth & Son, Inc.*, 222 W. Va. 309, 314, 664 S.E.2d 531, 536 (2008) (per curiam). "A motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." *Id.* at 314, 664 S.E.2d at 536 (citation omitted). Further, the appellant bears the burden of proof to show that there was error in the proceeding below, with all presumptions being in favor of the trial court. *See id.*

We review challenges to punitive damages awards under a de novo standard. Syl. Pt. 16, *Peters v. Rivers Edge Mining, Inc.*, 224 W. Va. 160, 680 S.E.2d 791 (2009), superseded by statute on other grounds as stated in *Martinez v. Asplundh Tree Expert Co.*,

5

239 W. Va. 612, 803 S.E.2d 582 (2017) ("When reviewing an award of punitive damages in accordance with Syllabus point 5 of *Garnes v. Fleming Landfill, Inc.,* 186 W. Va. 656, 413 S.E.2d 897 (1991), and Syllabus point 5 of *Alkire v. First National Bank of Parsons,* 197 W. Va. 122, 475 S.E.2d 122 (1996), this Court will review *de novo* the jury's award of punitive damages and the circuit court's ruling approving, rejecting, or reducing such award.") Regarding attorney's fees, "we apply an abuse of discretion standard when reviewing the lower court's award of attorney fees." *CIT Bank, N.A. v. Coffman*, 250 W. Va. 464, __, 904 S.E.2d 466, 476 (2024) (citation omitted).

## III. DISCUSSION

On appeal, Petitioners argue four assignments of error, which we will address in turn. First, Petitioners contend that Steak Escape was not properly served with a copy of Mr. Hudson's summons and complaint. We agree.

As to this assignment of error, the issue before us is whether service of process was achieved upon Steak Escape through the WVSOS. West Virginia Code § 31B-1-111(c) (2017) allows for service on a limited liability company (such as Steak Escape) via the WVSOS as attorney-in-fact.[5] "Service of any process [. . .] on the Secretary of State

---

[5] While the parties to this appeal and the court below cited West Virginia Code § 31D-5-504(c) regarding the attempted service of process of Steak Escape, that statute deals with the service of corporations. West Virginia Code § 31B-1-111(c) is the statute which deals with service of limited liability companies through the Secretary of State. The operative language of these statutes is identical and the applicable analysis would be the same.

may be made by delivering to and leaving with the Secretary of State [. . .] the original process, notice or demand and two copies thereof for each defendant, along with the [required fee]." *Id.* Following receipt by the WVSOS, the WVSOS is required to immediately transmit a copy of the filing by registered or certified mail to the company's registered agent.

> Such service or acceptance of process, notice or demand is sufficient if the return receipt is signed by an agent or employee of such company, or the registered or certified mail so sent by the Secretary of State is refused by the addressee and the registered or certified mail is returned to the Secretary of State, showing the stamp of the United States Postal Service that delivery thereof has been refused, and such return receipt or registered or certified mail is received by the Secretary of State by a means which may include electronic issuance and acceptance of electronic return receipts.

*See id*. While this statute regarding limited liability companies has not been addressed by the Supreme Court of Appeals of West Virginia ("SCAWV"), the parallel statute regarding service of corporations with identical language has been. "Under [West Virginia Code], § 31D–5–504(c) [2002], service of process or notice upon a domestic corporation through the Secretary of State is insufficient when a registered or certified mailing of the process or notice is neither accepted nor refused by an agent or employee of the corporation."[6] Syl. Pt. 2, *Burkes v. Fas-Chek Food Mart Inc*, 217 W. Va. 291, 617 S.E.2d 838 (2005). As the

---

[6] The 2017 effective language of West Virginia Code § 31D-5-504(c) is substantively and substantially the same as the 2002 version of the statute.

7

statute for service upon a limited liability company is identical in language to West Virginia Code § 31D-5-504(c), we find that the same principles would apply in the instant case.

In its September 18, 2023, order denying Petitioners' motion to set aside default judgment, the circuit court found that Steak Escape was served by mail through the WVSOS. The court found that Steak Escape had actual knowledge of the lawsuit, and failed to provide the court with satisfactory evidence that it could receive mail at the address provided to the WVSOS. Critical to our review is the evidence that the service of process sent through the WVSOS was returned "undeliverable as addressed." As discussed above, West Virginia Code § 31B-1-111(c) states that service of process is sufficient if the mailing is signed for by an agent or employee of the corporation or returned "refused." In the instant case, neither of those things happened. No agent or employee of Steak Escape signed for the service of process, nor was the service of process returned "refused." Thus, pursuant to West Virginia Code § 31B-1-111(c) and *Burkes*, the return of process to the WVSOS as "undeliverable as addressed" is insufficient to constitute service on Steak Escape, as it was neither an acceptance nor a refusal of the certified mail.[7] Therefore, we find that the circuit court abused its discretion in determining that Steak Escape was

---

[7] With respect the validity of Steak Escape's listed address for service, there is no authority, statutory or otherwise, for the circuit court's imposition of a burden on Steak Escape to prove the legitimacy of the address for service listed with the WVSOS. In that regard, the only evidence in the record indicating that Steak Escape's address was not correct was the return of the certified mail as undeliverable. Pursuant to *Burkes*, this fact alone is not sufficient to establish service in a manner not specifically contemplated by the statute.

8

properly served. This finding is dispositive of Steak Escape's appeal and, therefore, we will address the three remaining assignments of error as to Mr. Macleery only.

Turning to the surviving claims against Mr. Macleery, Petitioners argue that the circuit court erred in denying the motion to set aside the default judgment for good cause based on the *Parsons* factors. We disagree.

> In determining whether a default judgment should be entered in the face of a Rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.

Syl. Pt. 3, *Parsons,* 163 W. Va. 464, 256 S.E.2d 758 (1979). Below, the circuit court focused on the fourth *Parsons* factor and determined that Mr. Macleery had demonstrated complete intransigence. Specifically, the circuit court found, and the record supports, that Mr. Macleery was personally served on September 8, 2022. Mr. Macleery failed to file an answer to the complaint or cooperate in the litigation in any way other than filing a brief response to Mr. Hudson's interrogatories. Following the award of default judgment, Mr. Hudson's counsel spoke to Mr. Macleery to attempt to schedule the next hearing on damages, but Mr. Macleery did not cooperate. An emergency motion to set aside the default judgment wasn't filed until March 1, 2023, nearly six months later. In fact, the record reflects that Mr. Macleery only obtained counsel after the default judgment was entered against him. His motion to set aside the default judgment was filed only two days prior to the originally scheduled evidentiary damages hearing. Based on these facts, we find no

9

error in the circuit court's finding of Mr. Macleery's "complete intransigence." While the court's September 18, 2023, order did not include an analysis of the remaining *Parsons* factors, even if these factors weighed in favor of Mr. Macleery, based on the record before us, we cannot find that the circuit court abused its discretion in denying the motion to set aside the default judgment. *See Lee v. Gentlemen's Club, Inc.*, 208 W. Va. 564, 568, 542 S.E.2d 78, 82 (2000) ("any evidence of intransigence on the part of the defaulting party should be weighed heavily against him in determining the propriety of a default judgment").

Petitioners next argue that the punitive damages award against Mr. Macleery was improper. Specifically, Petitioners contend that the circuit court failed to cite the correct standard of clear and convincing evidence for awarding punitive damages; that the evidence does not support a finding of punitive damages; and that the amount of punitive damages were not supported. Based upon our review of the record before us, we disagree.

The SCAWV has stated that:

> [A]n award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

Syl. Pt. 12, *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021). Due to the default judgment entered against Mr. Macleery, which we uphold on appeal, all allegations made

10

in Mr. Hudson's complaint are deemed admitted.[8] Thus, Mr. Macleery's arguments fail as the complaint alleges conduct sufficient to support a claim for punitive damages.

In his complaint, Mr. Hudson alleges violations of the WVHRA for disability discrimination and reprisal, failure to accommodate, and aiding and abetting disability discrimination. As to all three counts, Mr. Hudson alleged that Mr. Macleery's actions were willful and/or with reckless indifference to the rights of Mr. Hudson. We find the allegations in the complaint, as well as Mr. Hudson's testimony from the October 2, 2023, hearing, support the circuit court's determination that "[Mr.] Macleery's actions were willful, mean-spirited acts with a clear intent to cause physical or emotional harm such that an award of punitive damages is justified." *Judgment Order* at A.R. 640. Specifically, the complaint stated that Mr. Hudson was told to "suck it up" when asking for accommodations due to his diagnosis of ulnar nerve palsy. In his complaint, Mr. Hudson alleged that after informing his employer of his condition and need for accommodations, retaliation against him began in the form of taunting, false and/or unfair job performance evaluations, and reprimands for being too slow at his job. The complaint further alleged that after requesting time off for a neurology appointment, and within thirty days of reporting the disability, Mr. Hudson's employment at Steak Escape was terminated. Further still, Mr. Hudson testified that Mr. Macleery hassled him over his disability, and he was called names in the workplace such as "slow" and "retarded." Based on these uncontested allegations, we find

---

[8] *See* West Virginia Rules of Civil Procedure Rule 8(b)(6).

no error in the circuit court's determination that punitive damages were justified by clear and convincing evidence.

Further, we find no error in regard to the amount of punitive damages awarded against Mr. Macleery. West Virginia Code § 55-7-29(c) (2015) states "[t]he amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater." Here, the punitive damages award was $50,000, a sum well below $500,000, and less than four times the amount of compensatory damages. Additionally, the circuit court assessed the factors to be considered in accordance with *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), Syl. Pts. 3 & 4, and *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992), Syl. Pt. 15., in considering the amount of punitive damages to be awarded against Mr. Macleery. In *Garnes*, the SCAWV held:

> When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:
> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
> (2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was

12

aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

*Garnes*, 186 W. Va. at 658, 413 S.E.2d at 899, Syl. Pt. 3.

When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

(1) The costs of the litigation;

(2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

*Id.* at 659, 413 S.E.2d at 900, Syl. Pt. 4.

Further,

[t]he outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not *per se* unconstitutional.

*TXO Production Corp.,* 187 W. Va. at 461, 419 S.E.2d at 874, Syl. Pt. 15.

13

Here, Mr. Macleery concedes that the circuit court applied these punitive damage standards but takes issue with the circuit court's findings related to only one factor, relationship to the harm caused. We find Mr. Macleery's argument in this regard unconvincing. As discussed above, the record establishes that Mr. Hudson was subjected to willful and mean-spirited acts at the hands of his fellow Steak Escape employees. These acts provide a reasonable basis to allow the $50,000 punitive award to stand. Therefore, we find no error in the circuit court's award, or the amount of punitive damages.

In their final assignment of error, Petitioners assert that the circuit court abused its discretion in its award of attorney's fees to Mr. Hudson. The sole argument advanced by Petitioners is that the attorney's fees awarded were largely a result of the limited discovery (depositions) ordered by the circuit court, which the court "largely ch[o]se to disregard in determining that it would not set aside the default judgment." Petitioners' argument in this regard was raised in a cursory manner, was skeletal in nature, and lacked any reasonable specificity or meaningful explanation.

As this Court reasoned in its recent opinion in *Moschonas v. Charles Town General Hospital,* ___ W. Va. ___, ___ S.E.2d ___, 2025 WL 414851, at *10 (2025):

> [t]his court is not required to address arguments which are raised in such a perfunctory manner. *See Megan W. v. Robert R.*, No. 23-ICA-353, 2024 WL 1592600, at *5 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision) ("It is well established that, '[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim[.]'" (quoting *State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015); *see*

14

*also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("issues which are . . . mentioned only in passing . . . are not considered on appeal")).

Despite the skeletal nature of Petitioners' argument as to attorney's fees, when considering this issue on the merits, we find the circuit court did not abuse its discretion. The circuit court analyzed the award of attorney's fees under *Aetna Cas. & Sur. Co v. Pitrolo,* 176 W. Va. 190, 342 S.E.2d 156 (1986)[9] and found that the time and labor expended, in conjunction with the additional depositions, briefings, and hearings conducted, were all reasonable. This Court has no basis in fact or law to conclude that the circuit court abused its discretion in awarding Mr. Hudson attorney's fees and, accordingly, we affirm the same.

## IV. CONCLUSION

For the foregoing reasons, we affirm the March 21, 2024, judgment order, and the September 18, 2023, order of the Kanawha County Circuit Court, as it applies to Mr. Macleery. We reverse the default judgment in regard to Steak Escape and remand for further proceedings consistent with this opinion.

---

[9] The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Syl. Pt. 4, *Aetna Cas. & Sur. Co v. Pitrolo,* 176 W. Va. 190, 342 S.E.2d 156 (1986).

Affirmed, in part, Reversed, in part, and Remanded.