IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

**FILED**

**May 29, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-331

RONALD J. HOPKINS, II, RACHEL L. ABRAMS HOPKINS,
SARAH A. ABRAMS, and LANGHORNE ABRAMS,
Respondents Below, Petitioners,

v.

MARY C. SUTPHIN,
Petitioner Below, Respondent.

Appeal from the Intermediate Court of Appeals of West Virginia
No. 22-ICA-201
Civil Action No. CC-41-2017-C-591

AFFIRMED, IN PART; VACATED AND REMANDED, IN PART

Submitted:  April 22, 2026
Filed: May 29, 2026

Russell D. Jessee, Esq.
Dallas F. Kratzer, III, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Petitioners

Joseph L. Caltrider, Esq.
Liana L. Stinson, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondent

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE WOOTON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE JAMES W. COURRIER, JR., sitting by temporary assignment.

JUSTICE TRUMP, deeming himself disqualified, did not participate in the decision of this case.

JUDGE SHAWN D. NINES, sitting by temporary assignment.

JUSTICE TITUS, deeming himself disqualified, did not participate in the decision of this case.

JUDGE ANITA HAROLD ASHLEY, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "In reviewing an Intermediate Court of Appeals' decision from a circuit court's grant of a motion to dismiss, this Court applies a de novo standard of review." Syllabus Point 1, *Folse v. Rollyson*, 251 W. Va. 566, 915 S.E.2d 344 (2025).

2.      "In an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, the inclusion of the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure makes that order appealable immediately with respect to the dismissed parties and claims." Syllabus Point 1, *Riffe v. Armstrong*, 197 W.Va. 626, 477 S.E.2d 535 (1996), *modified on other grounds by Moats v. Preston County Commission*, 206 W. Va. 8, 521 S.E.2d 180 (1999).

3.      "An order dismissing fewer than all of the parties or fewer than all the claims in a civil action which contains a determination by a circuit court that the order *not* be considered final will be reviewed by this Court only upon application for a writ of prohibition. The party seeking such a writ must show any such abuse clearly and convincingly, because this Court greatly favors having before it all matters in controversy when reviewing the issues raised before it." Syllabus Point 5, *Riffe v. Armstrong*, 197 W.Va. 626, 477 S.E.2d 535 (1996), *modified on other grounds by Moats v. Preston County Commission*, 206 W. Va. 8, 521 S.E.2d 180 (1999).

4.    "Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that 'no just reason for delay' exists and 'directi[ng] . . . entry of judgment' will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect." Syllabus Point 2, *Durm v. Heck's*, 184 W. Va. 562, 401 S.E.2d 908 (1991).

5.    "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syllabus Point 8, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d. 255, 269 (2009).

6.    "'A civil conspiracy is . . . a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).' Syl. Pt. 9, in part, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009)." Syllabus Point 4, *Jane Doe-1 v. Corporation of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 801 S.E.2d 443 (2017).

ii

**BUNN, Chief Justice:**

Petitioners Ronald Hopkins, Sarah Abrams, and Rachel Hopkins appeal the decision of the Intermediate Court of Appeals ("ICA") that reinstated certain claims against them after the circuit court granted their partial motion to dismiss.[1] For the reasons discussed below, we conclude that the exception to the rule of finality articulated in West Virginia Code § 58-5-1 and Rule 54(b) of the West Virginia Rules of Civil Procedure does not apply and the ICA was without appellate jurisdiction to have considered Ms. Sutphin's interlocutory appeal of her dismissed claims as to Ms. Abrams and Mrs. Hopkins. Accordingly, we vacate its decision in that respect. However, we conclude that the ICA was within the bounds of its jurisdiction to hear Ms. Sutphin's appeal of the dismissal of her claims against Mr. Hopkins, and that this Court is within its jurisdiction to hear Mr. Hopkins' subsequent appeal of that ruling. Under this Court's holding in *Durm v. Heck's*, 184 W. Va. 562, 401 S.E.2d 908 (1991), the portion of the order dismissing Ms. Sutphin's claims against Mr. Hopkins contains the requisite degree of finality to satisfy Rule 54(b). Finding no error in the ICA's decision to reinstate the civil conspiracy claim against Mr. Hopkins, we affirm it in that respect.

---

[1] *Sutphin v. Hopkins*, No. 22-ICA-201, 2024 WL 1270201 (W. Va. Ct. App. March 25, 2024).

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying suit has a convoluted factual and procedural history, so we focus on the relevant points for resolution of the immediate issues before us. Nancy Pat Lewis-Smith owned, at the time of her death, 242 of 394 shares of stock in the Lewis Chevrolet Company, a car dealership operating in Beckley, West Virginia. Upon her death, her will provided that the shares were to be held in trust, with equal shares distributed to her three children after ten years. That distribution occurred in 2019. Ms. Sutphin, one of Ms. Lewis-Smith's daughters, alleges she currently owns 20.47% of the stock in Lewis Chevrolet. Relative to her interests in Lewis Chevrolet, Ms. Sutphin filed the underlying suit against her sister, Petitioner Langhorne Abrams; her brother-in-law, David Abrams; her nieces, Petitioners Sarah Abrams and Rachel Abrams Hopkins; and Rachel Hopkins' husband, Petitioner Ronald Hopkins, II.[2]

Of relevance here, Lewis Chevrolet is a family-run business; at the relevant times of the complaint, all corporate officers were members of the Abrams family. David Abrams, an attorney, drafted Ms. Lewis-Smith's will, administered the trust named as the beneficiary of her will to house all Ms. Lewis-Smith's stock, served as a member of Lewis Chevrolet's Board of Directors as Executive Vice-President and Assistant Secretary, and was its in-house counsel. Sarah Abrams, the daughter of David and Langhorne Abrams,

---

[2] Ms. Sutphin's original complaint included additional defendants not at issue in this appeal.

was also a member of Lewis Chevrolet's Board of Directors, served as Secretary and Treasurer, and was employed full-time with the company. Rachel Hopkins, also a daughter of David and Langhorne Abrams, served as President of the Board of Directors, was employed full-time as the principal of Lewis Chevrolet, and owned sixty shares of its stock. Ronald Hopkins was employed full-time with Lewis Chevrolet as the general manager.

In her second amended complaint, Ms. Sutphin alleges, among other things, breach of fiduciary duties, negligence in the management of Lewis Chevrolet, and tortious interference with her inheritance. She alleges that Mr. Abrams knowingly conspired with the other Defendants to divert benefits of Lewis Chevrolet to his family members and named Petitioners as his co-conspirators in a civil conspiracy. Petitioners Sarah Abrams and Rachel Hopkins filed a partial motion to dismiss the claims against them for conversion, negligence, tortious interference with inheritance, fraud, unjust enrichment and constructive trust, but did not move for dismissal of Ms. Sutphin's claims based on violations of the West Virginia Business Corporation Act, breach of fiduciary duties as officers and directors, or civil conspiracy. The circuit court granted their partial motion to dismiss by order dated September 28, 2022, which dismissed those claims with prejudice.

Mr. Hopkins also filed a motion to dismiss all claims against him, including tortious interference with inheritance, civil conspiracy, unjust enrichment, and constructive

3

trust. The circuit court also granted his motion to dismiss in its September 28, 2022 order,[3] dismissing Mr. Hopkins as a party entirely, with prejudice, and indicating in its order, "this dismissal is intended to be a final ruling by the Court on all matters asserted against Mr. Hopkins."

Ms. Sutphin appealed those rulings to the ICA, contending that the circuit court erred in dismissing the claims under the standards of Rule 12(b)(6) of the West Virginia Rules of Civil Procedure and, in the alternative, that the circuit court erred in dismissing the claims with prejudice. The ICA, by memorandum decision, reinstated Ms. Sutphin's civil conspiracy claim against Mr. Hopkins, concluding that, at least as to the civil conspiracy claim, Ms. Sutphin had sufficiently pled a claim by notice-pleading standards. As to Sarah Abrams and Rachel Hopkins, the ICA affirmed the dismissal of Ms. Sutphin's claims against them for tortious interference with inheritance for failure to meet notice pleading standards. However, the ICA reinstated Ms. Sutphin's claims against them for conversion, negligence, unjust enrichment, and constructive trust, concluding that they were pled in the alternative to Ms. Sutphin's alleged violations of the West Virginia Business Corporations Act and alleged breach of fiduciary duty claims. Finally, as to all dismissed claims, the ICA concluded the circuit court erred in dismissing the claims with

---

[3] The September 28, 2022 order also addressed motions by Lewis Chevrolet and Langhorne Abrams that are not at issue in this appeal.

4

prejudice.[4] Though the decision indicated that exercise of appellate jurisdiction was appropriate under West Virginia Code § 51-11-4, it did not otherwise address the lack of a final order. Mr. Hopkins now appeals to this Court challenging the reinstatement of the civil conspiracy claim against him, and Sarah Abrams and Rachel Hopkins similarly challenge the reinstatement of Ms. Sutphin's claims against them, albeit for different reasons.

## II.

## STANDARD OF REVIEW

Mr. Hopkins, Ms. Abrams, and Mrs. Hopkins appeal the Intermediate Court's decision that effectively reinstated certain claims against them and remanded the case to the circuit court. Regarding this posture, this Court has observed that "[b]ecause the ICA has been substituted for this Court in the first step of the appellate review process for civil cases, the ICA follows a similar standard of review in addressing 12(b) motions to dismiss as that previously followed when this Court reviewed such decisions from a circuit court." *Folse v. Rollyson*, 251 W. Va. 566, 570, 915 S.E.2d 344, 348 (2025). That is, the ICA applies a de novo standard of review to the circuit court's grant of a motion to dismiss, and any question of law arising from it. *Id.* (quoting *Savarese v. Allstate Ins. Co.*, 223 W. Va. 119, 123-24, 672 S.E.2d 255, 259-60 (2008); Syl. Pt. 1, *Chrystal R.M. v.*

---

[4] The ICA decision also addressed the dismissal of Ms. Sutphin's claims against Langhorne Abrams. As those claims are not at issue here, we need not discuss its disposition of those claims.

*Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)). On appeal from the ICA, we similarly employ a de novo review: "[i]n reviewing an Intermediate Court of Appeals' decision from a circuit court's grant of a motion to dismiss, this Court applies a de novo standard of review." Syl. Pt. 1, *Folse*, 251 W. Va. 566, 915 S.E.2d 344.

## III.

## DISCUSSION

Mr. Hopkins faults the ICA decision insofar as civil conspiracy was the only claim it reinstated against him. Mr. Hopkins contends civil conspiracy cannot be maintained as a stand-alone claim, and further argues it was insufficiently pleaded, in any case. Ms. Abrams and Mrs. Hopkins also allege that the ICA erred in reinstating Ms. Sutphin's claims against them, reasoning that those individual-capacity claims are duplicative of the official-capacity claims that remain pending, and are also insufficiently pleaded. Because Petitioners appeal from motions to dismiss that do not otherwise end the litigation, before attending to the merits, we stop to assess our appellate jurisdiction to do so. *See James M.B. v. Carolyn M.*, 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995) ("It is, of course, axiomatic that a court of limited appellate jurisdiction is obliged to examine its own power to hear a particular case.").

### A.    *Appellate Jurisdiction Pursuant to Rule 54(b)*

Under West Virginia Code § 58-5-1(a), neither this Court nor the ICA may pass judgment upon an interlocutory order; it must be final before either is vested with

6

appellate jurisdiction:

> [a] party to a civil action may appeal to the Supreme Court of Appeals from a *final* judgment of any circuit court . . . an appeal of a *final* order or judgment of a circuit court entered after June 30, 2022, shall be to the Intermediate Court of Appeals, as required by § 51-11-1 *et seq.* of this code.

(emphasis added). *See also* W. Va. Code § 51-11-4(d)(8) ("The Intermediate Court of Appeals does not have appellate jurisdiction over . . . interlocutory appeals[.]"); *Accord* Syl. Pt. 6, *Aaron W. v. Evelyn W.*, 251 W. Va. 1, 909 S.E.2d 36 (2024) ("The Intermediate Court of Appeals of West Virginia generally does not have appellate jurisdiction over interlocutory appeals. W. Va. Code § 51-11-4(d)(8).").

Although observed in the context of a criminal appeal, we recently recounted the so-termed "rule of finality" or "final judgment rule," reiterating that appropriate exercise of appellate jurisdiction is contingent upon a final order:

> [West Virginia Code § 58-5-1's] grant of appellate jurisdiction requires a final judgment. *See James M.B.*, 193 W. Va. at 291, 456 S.E.2d at 18, Syl. Pt. 3, in part ("Under W. Va. Code, 58-5-1 (1925), appeals only may be taken from final decisions of a circuit court."). The final judgment rule is of early vintage, having been called "an historic characteristic of . . . appellate procedure." *Id.* at 292, 456 S.E.2d at 19 (quoting *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984)).

*State v. Hensley*, No. 23-629, __ W. Va. __, __ S.E.2d __ (W. Va. April 30, 2026). The final judgment rule is "designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" *James M.B.*, 193 W. Va. at 292, 456 S.E.2d at 19 (quoting *United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 265

7

(1982)). The prudence of employing the rule is indisputable. We have explained that it "preserves the autonomy of the trial court by minimizing appellate interference, ensuring that the role of the appellate court will be one of review rather than one of intervention[,]" that it is grounded in efficiency, "by providing there will only be review where the record is complete and the judgment pronounced[,]" and that, in the civil context, the rule "reduces the ability of litigants to wear down their opponents by repeated, expensive appellate proceedings." *Id.* at 292 n.2, 456 S.E.2d at 19 n.2 (internal citations omitted).

To meet the requirements of the rule of finality, the order must be "final in respect that it ends the case." *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995). *See also James M.B.*, 193 W. Va. at 292, 456 S.E.2d at 19, Syl. Pt. 3, in part ("A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.'") West Virginia Code § 58-5-1(a), however, also encompasses an exception to the final judgment rule, stating that in some cases, the order need not dispose of the case in toto to meet appellate jurisdictional requirements:

> [a] party to a civil action may appeal . . . from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties.

This "exception" to the rule of finality is also ensconced in Rule 54(b) of the

8

West Virginia Rules of Civil Procedure and permits otherwise interlocutory review in multi-party and multi-claim litigation under the proviso that the circuit court's determination dispenses with a party to the litigation or disposes of a claim in its entirety, and that the circuit court determines there is no just reason to delay pursuit of an appeal as to that claim or party:

> When an action presents more than one claim for relief whether as a claim, counterclaim, crossclaim, or third-party claim or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, including in a multiparty case the dismissal of all of the claims against fewer than all of the parties, does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*See also James M.B.*, 193 W. Va. at 292 n.3, 456 S.E.2d at 19 n.3 (recognizing orders certified under Rule 54(b) as an exception to rule of finality). Under Rule 54(b), when entering a judgment disposing of a party or a claim within broader, multi-party or multi-claim litigation, the circuit court has the discretion to specify that its judgment as to that claim or party is final, and the order then becomes appealable when accompanied with the designation that there is no just reason for delay. In applying Rule 54(b) in the context of jurisdictional finality, this Court has held that, "[i]n an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, the inclusion of the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure makes that order appealable immediately with respect to the dismissed parties and claims." Syl. Pt. 1, *Riffe*

9

*v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996), *modified on other grounds by Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999). Without such a finality certification, the Rule provides that the circuit court may revise its decision at any time prior to the entry of a final order adjudicating all claims as to all parties.

Conversely, a circuit court may also expressly indicate that its partial order is *not* final for purposes of Rule 54(b) and such partial order would be reviewable only pursuant to a petition for extraordinary relief:

> An order dismissing fewer than all of the parties or fewer than all the claims in a civil action which contains a determination by a circuit court that the order *not* be considered final will be reviewed by this Court only upon application for a writ of prohibition. The party seeking such a writ must show any such abuse clearly and convincingly, because this Court greatly favors having before it all matters in controversy when reviewing the issues raised before it.

Syl. Pt. 5, *id.* Noting that "an appellate court ought to usually have before it all of the controversy that was brought to the court below[,]" this Court has articulated a preference for unitary proceedings because "*in most cases*[,]" they are "both more fair and more efficient." *Bryan v. Big Two Mile Gas Co.*, 213 W. Va. 110, 116, 577 S.E.2d 258, 264 (2001) (quoting *Riffe*, 197 W. Va. at 637, 477 S.E.2d at 546) (emphasis added). To determine which partial judgments might meet the criteria of demanding immediate review in the interests of justice, the circuit courts are vested with the discretion to assess the propriety of certification under Rule 54(b) to propose the partial matter for immediate appeal, as guided by the circumstances of the case and the prevailing view that certification

should not be routine and should be reserved only for the "infrequent harsh case." *Province v. Province*, 196 W. Va. 473, 479, 473 S.E.2d 894, 900 (1996) (quoting Fed. R. Civ. P. 54 advisory committee's note).

Consistent with the language of the rule and in view of its jurisdictional parameters, the Court customarily declined to review an order that did not contain an express determination from the circuit court under Rule 54(b). *See* Syl. Pt. 3, *Smith v. Buege*, 182 W. Va. 204, 387 S.E.2d 109 (1989) ("Under W. Va. R. Civ. P. 54(b), an order relating to less than all of multiple parties is not a final, appealable judgment unless the order expressly states that it is a final order and contains an express determination that there is no just reason for delay in final adjudication of the rights and liabilities in question."). *But see Parsons v. Consolidated Gas Supply Corp.*, 163 W. Va. 464, 256 S.E.2d 758 (1979) (flexible interpretation of Rule 54(b) warranted in context of interlocutory appeal from default judgment).

Not long after pronouncing its bright-line rule in *Buege* requiring circuit court certification under Rule 54(b), in *Durm v. Heck's*, the Court seemingly abandoned it.[5] In *Durm*, the Court dispensed with the formalities of the Rule and sacrificed the wisdom

---

[5] *Durm* did not address the then-recently-issued syllabus point in *Buege*, but instead relied solely on *Parsons*, 163 W. Va. 464, 256 S.E.2d 758. *Parsons*, explicitly limiting itself to the context of default judgments, explained that Rule 54(b) called for more liberal interpretation than that employed in federal practice, particularly where one party's liability had bearing on the other parties. *Id.* at 468-69, 256 S.E.2d at 760-61. It explained that the

11

of the circuit courts in order to accommodate the interests of fairness and timely justice. 184 W. Va. 562, 401 S.E.2d 908 (1991). The *Durm* Court explained that the purpose of Rule 54(b)

> "is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making immediate appeal available . . . . The rule attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple claim situations at a time that best serves the needs of the litigants."

*Id.* at 565-66, 401 S.E.2d at 911-12 (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2653 at 35-37 (1983)). Stated another way, by eliminating the requirement to strictly comply with the Rule's certification process, *Durm* shifted the decisionmaking from the circuit courts to the parties to determine what appellate timeline and procedures "best serve[d] the needs of the litigants."

*Durm* recognized that West Virginia's Rule 54(b) is identical to the federal counterpart, and that the federal appellate courts required that the district court certify the need for immediate appeal before exercising jurisdiction *Id.* at 566, 401 S.E.2d at 912. Still, the Court in *Durm* reasoned that it should view the Rule's requirements more liberally based on the structure of our state appellate system. *Id.* (citing *Parsons*, 163 W. Va. at 469,

---

divergence "reflects not so much a difference in philosophy" but rather the "difference between our appellate system and the federal appellate system regarding the right to appeal." *Id.* at 469, 256 S.E.2d at 761.

256 S.E.2d at 761. That is, unlike litigants in federal court, West Virginia litigants did not enjoy appeal by right at the time *Durm* was decided. *Id.* Because the Court then exercised discretionary appellate review, it concluded that it could interpret Rule 54(b) with more laxity: it could exercise its discretion to defer the appeal of the partial judgment, where necessary, until the case had ultimately concluded, where the federal courts did not have that discretion. *Id.* Presumably, then, the Court concluded that the risks of piecemeal litigation were not so perilous under a system that did not grant an appeal by right when weighed against the potential for injustice posed by "deny[ing] an immediate appeal from the disposition of an identifiable and separable portion of a . . . [civil] action[.]" *Id.* at 567, 401 S.E.2d at 913 (quoting Wright & Miller, *supra*, at 20).

The *Durm* Court thus concluded that if the parties appealed without requesting a certification from the circuit court as to the finality of the partial judgment or the order was otherwise silent as to finality and cause for delay, this Court would decide the case on the merits so long as the order—as determined by *this* Court—contained the requisite degree of finality as to a party or claim to satisfy its jurisdictional requirements:

> Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] . . . entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

Syl. Pt. 2, *Durm. See also State ex rel. McGraw v. Scott Runyan Pontiac Buick, Inc.*, 194

13

W. Va. 770, 775, 461 S.E.2d 516, 521 (1995) (extending *Durm* reasoning to partial orders

dismissing claims or parties pursuant to Rule 12(b)(6)). Predictably, *Durm*-type orders led

and continue to lead to onerous confusion regarding waiver of appellate rights[6] and the

effect of a motion to the circuit court under Rule 60(b).[7] This confusion is compounded by

the guesswork associated with ascertaining the circuit court's likelihood of revisiting its

---

[6] Syllabus Point 2 of *Hubbard v. State Farm Indemnity Co.*, 213 W. Va. 542, 584 S.E.2d 176 (2003) clarified,

> Where a case involves multiple defendants, and a partial summary judgment order that is a final order pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure has been entered exclusively against one defendant, the finality of that order may not be imputed upon an earlier interlocutory order granting partial summary judgment exclusively against a separate defendant.

However, Ms. Sutphin contended at oral argument that she pursued an appeal out of caution to avoid waiving any appellate rights.

[7] Syllabus Point 3 of *Hubbard* explained that,

> An otherwise interlocutory order that is not expressly certified as final by using the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure remains interlocutory so long as the affected party does not seek an appeal. Consequently, when a party seeks to have a circuit court reconsider its ruling on such an order prior to entry of a final judgment disposing of the entire case, the interlocutory order should not be reviewed under Rule 60(b) of the West Virginia Rules of Civil Procedure.

However, "[a]s long as a circuit court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Syl. Pt. 4, *id.*

14

order.[8]

Notably, the appellate structure of West Virginia's courts has changed since *Durm* to integrate not only appeal by right, but the introduction of an intermediate appellate court. *See* W. Va. Code § 51-11-4(b)(1). Not one but *two* courts now perform a jurisdictional analysis that is at the same time both disorderly and dispositive. Juxtaposed with the issues currently before us where piecemeal litigation presents itself so starkly, the continuing justification for liberalization of the rule is feeble. *See also Province*, 196 W. Va. at 480, 473 S.E.2d at 901 ("As a practical matter, we have gone as far as an appellate court should go in allowing appeals under Rule 54(b) where there was no express certification by the circuit court."). Nevertheless, in the interests of justice given the decades of precedent otherwise, we do not here pronounce the appeal currently before us, or, rather, Ms. Sutphin's appeal to the ICA, as jurisdictionally defective for lack of an express certification under Rule 54(b) and turn instead to whether the order on appeal approximates a final order.

Ms. Sutphin contended in her filing before the ICA that the circuit court had

---

[8] Syl. Pt. 4, *Riffe*, 197 W. Va. 626, 477 S.E.2d 535 ("Whether an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, which does not contain the express determinations set forth in Rule 54(b) of the West Virginia Rules of Civil Procedure, was intended to be final and is therefore appealable before the entire action is terminated will be determined by this Court from all the circumstances and the terms of the order. The better practice for the circuit courts to follow is to expressly state or negate their intentions with respect to the finality of such an order within the body of the order.").

not certified the partial judgment order, so we consider it a *Durm*-type order as she ostensibly pursued her appeal under Rule 54(b) as an appeal from dismissal of a party and certain claims. We ask, then, in the absence of an express certification from the circuit court whether the mandates of Rule 54(b) are otherwise satisfied: does the order approximate a final order in its nature and effect and is there cause to render it immediately appealable? *See Province*, 196 W. Va. at 478-79, 473 S.E.2d at 899-900.

In making that assessment, we must first distinguish Ms. Sutphin's claims against Mr. Hopkins from those against Ms. Abrams and Mrs. Hopkins. The circuit court's order dismissed Mr. Hopkins, with prejudice, as a party to the action and stated that its decision was "final" as to Mr. Hopkins. So, while the order does not contain an explicit finding from the circuit court that there was just no cause for delay in the appeal of its decision relative to Mr. Hopkins, we can readily divine that reasoning based on Mr. Hopkins' complete dismissal from the action and from the court's own expression that it approximates a final order. Further, insofar as discovery was proceeding without Mr. Hopkins after his dismissal from the case with prejudice, had the circuit court been presented with a motion to certify,[9] it would have been within its discretion to grant it as to Mr. Hopkins.

---

[9] We have explained that "[t]he preferable approach for any litigant who expects to appeal interlocutory less than all the issues in an action is to request a certification order as required by Rule 54(b)." *Province*, 196 W. Va. at 480 n.16, 473 S.E.2d at 901 n.16.

However, the circuit court made no such "final" determination as to the claims against Ms. Abrams and Mrs. Hopkins, despite dismissing those claims with prejudice.[10] Even under *Durm*'s more liberal reading, this Court has explained that "whether the circuit court completely disposed of one or more claims . . . is a prerequisite for an appeal under this rule." *Province*, Syl. Pt. We have further explained in relation to the finality prong of certification that the claim on appeal must be dismissed in its entirety:

> [a] judgment properly may be certified under Rule 54(b) only if it possesses the requisite degree of finality. That is, the judgment must completely dispose of at least one substantive claim. A partial or interlocutory adjudication of a claim cannot be certified merely because it is labelled a "partial final judgment," "partial summary judgment" or labelled a 12(b)(6) dismissal, even if the requisite express determination has been made.

*Id.* at 479 n.12, 473 S.E.2d at 900 n.12. The claims Ms. Sutphin appeals have not been completely disposed of; they remain pending as to other defendants and so fail to meet the finality specifications of the Rule. We find the second prong of Rule 54(b)—that there is "no just reason for delay"—to be similarly unfulfilled.

Of particular import to the case before us, the second prong of Rule 54(b) evaluates "(1) any interrelationship or overlap among the various legal and factual issues involved in the decided and pending claims, and (2) any equities and efficiencies

---

[10] As noted above, but for the appeal in the absence of certification, the circuit court would have retained the authority to revisit its prejudice ruling that was later modified to "without prejudice" by the ICA, and, unlike Mr. Hopkins, Ms. Abrams and Mrs. Hopkins were still active participants in the litigation.

implicated by the requested piecemeal review." *Id.* at 479, 473 S.E.2d at 900. In *Province*, the Court assessed the appealability of a partial order dismissing a claim that was not certified by the circuit court under Rule 54(b) and trudged through the "Serbonian bog" of conducting 54(b) analysis uninformed by the circuit court's assessment of whether there was "no just reason for delay." *Id.* at 480-81, 473 S.E.2d at 901-02. Finding the task particularly vexing in the context of *Durm*-type order dismissing a claim (as opposed to a party), the Court explained that the circuit court plays the "critical role [of] Rule 54(b) dispatcher":

> the circuit court consider[s] the strong judicial policy disfavoring piecemeal appellate review by carefully comparing the claims that have been disposed of and the unadjudicated claims for indications of substantial overlap—to ensure that this Court is not confronted in successive appeals with common issues of law or fact to the detriment of judicial efficiency.

*Id.* at 479 n.14, 473 S.E.2d at 900 n.14. The Court explained, "[o]rdinarily, an appellate court cannot properly evaluate this prong without knowing how the circuit court feels about separating these issues for appellate purposes[,]" lamenting, "the entire purpose of Rule 54(b) is to place this decision in the hands of the trial court who can best make this delicate balance." *Id.* at 479-80, 473 S.E.2d at 900-01. Consequently, after determining that immediate appellate review under Rule 54(b) is warranted under that balancing test, the circuit court's certification is entitled to substantial deference, disrupted only when "clearly unreasonable." *Id.* at 479, 473 S.E.2d at 900.

Here, interlocutory appeal of these claims that have been only fractionally

dismissed so brazenly offends that balance that it is nearly archetypal of piecemeal litigation. Even had the parties requested a Rule 54(b) certification from the circuit court, we find it unlikely the circuit court would have found the dismissed claims both so separable from the claims still pending and the potential for injustice so evident that immediate appeal was warranted.

More than arising from the same set of facts, there are various actors alleged to have committed various acts wearing various hats, any one of which might give rise to or obviate another basis of liability and influence the liability of others. In fact, the issues are so common and overlapping that the very argument on appeal to this Court is that the still-pending claims sufficiently encompass those before us and are pleaded in the alternative to those other causes of action. Deploying Rule 54(b) to review such common and overlapping issues inseparable from their pending counterparts is likely to result—and, indeed, has already resulted—in multiple appeals.[11] While perhaps immediately and superficially expedient, permitting interlocutory appeal from these interrelated claims— and inadvertently inviting the appeal of others—carries a hefty price tag, both for the litigants themselves in pursuing and defending multiple appeals and for the appellate courts:

---

[11] As reflected in the ICA decision, it had already heard and disposed of a previous appeal on the same set of facts as they pertained to the dismissal of a claim against Mr. Abrams. *See Sutphin v. Abrams*, No. 22-ICA-126, 2023 WL 4030072, at *1 (W. Va. Ct. App. June 15, 2023).

> Although it might be easier to decide each appeal in a series of multiple appeals in the same case than would be an appeal from a final judgment disposing of the entire lawsuit, the greater simplicity will usually be outweighed by the burden on this Court of having to reacquaint itself again and again with at least the basic facts of the case.

*Province*, 196 W. Va. at 480, 473 S.E.2d at 901. The practical implications likewise weigh heavily against immediate review of issues that overlap or otherwise influence analysis of those still pending below, as

> [s]ubsequent circuit court proceedings could very well render superfluous whatever interim appellate resolution might be predicated on this fragile hypothetical foundation, and this Court could be required to revisit the very facts of this case again. Such piecemeal appellate exercises sacrifice judicial efficiency and risk serious, unintended *res judicata* effects.

*Id.* at 480 n.15, 473 S.E.2d at 901 n.15.

Accordingly, we find neither Rule 54(b)'s finality prong, nor its "no just reason for delay" prong satisfied as to the claims dismissed against Ms. Abrams and Mrs. Hopkins and we are precluded from exercising our appellate jurisdiction to review the circuit court's dismissals at this juncture. Of more practical consequence than our inability to review this appeal as to Ms. Abrams and Mrs. Hopkins, West Virginia Code § 58-5-1(a) provides that the ICA was likewise without appellate jurisdiction, as the matter was not properly reviewable under Rule 54(b) and remained interlocutory. *See Leeson v. Smith,* 132 W. Va. 715, 722, 53 S.E.2d 412, 415 (1949) ("Our jurisdiction is limited by Code, 58-5-1, and we are not warranted in entertaining jurisdiction in cases which do not come within the requirements of that section."). *See also* W. Va. Code § 51-11-4(d)(8) (ICA has no

20

appellate jurisdiction over interlocutory orders). For that reason, the ICA decision as to Ms. Abrams and Mrs. Hopkins must be vacated for want of jurisdiction, and the circuit court's order reinstated in those respects.

### B. Civil Conspiracy

Turning to Mr. Hopkins' appeal, having already determined it may be reviewed under Rule 54(b)'s exception to the rule of finality, we affirm the decision of the ICA. Mr. Hopkins argues that the ICA decision reinstated a singular claim against him— civil conspiracy—that cannot stand alone and thus should have also been dismissed. And, assuming Ms. Sutphin could maintain such a claim, Mr. Hopkins maintains civil conspiracy was insufficiently pleaded and should be dismissed as a result. Mr. Hopkins' primary argument is grounded in language from *Dunn v. Rockwell*, that states civil conspiracy "is not a *per se*, stand-alone cause of action[.]" 225 W. Va. 43, 57, 689 S.E.2d 255, 269 (2009).

In *Dunn*, the Court proposed to synthesize the seemingly imprecise characteristics of a conspiracy with others to commit a wrong distinguishable from the object tort itself, and, in so doing, issued a syllabus point holding that

> [a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

*Id.* at Syl. Pt. 8. The Court in *Dunn* however, also issued a holding concluding that "[a] civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine

21

under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id.* at Syl. Pt. 9. *Dunn* thus gives rise to Mr. Hopkins' argument that each individual co-conspirator must have committed a tort against Ms. Sutphin to support a civil conspiracy claim, and, as he owed no duty to Ms. Sutphin and no tort claims remain pending against him, he cannot be held liable.

As predicted by the dissent in *Dunn*, the purported clarification of civil conspiracy led to confusion, now seized upon by the parties to argue their respective positions relative to whether Mr. Hopkins owed any duty to Ms. Sutphin such that a tort claim could be independently brought against him for purposes of maintaining a civil conspiracy claim. *See id.* at 65-66, 689 S.E.2d at 277-78 (Davis, J., joined by Benjamin, J., dissenting, in part). However, the parties do not reference the case issued subsequent to *Dunn*, offering clarification on civil conspiracy. We find that the explanation there is dispositive of the issue.

In *Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, the Court re-applied, in part, the *Dunn* syllabus points as correct statements of the law in West Virginia. 239 W. Va. 428, 801 S.E.2d 443 (2017). Ironically conducted in the context of a Rule 54(b) certification analysis[12] of the severability of the civil conspiracy

---

[12] The partial order on appeal in *Jane Doe-1* was certified by the circuit court under Rule 54(b).

22

claim from the underlying tort claims still pending, *Jane Doe-1* explicated that civil conspiracy requires an underlying tort or harm resulting from the conspiracy, but civil conspiracy is a separate claim that does not require each co-conspirator to have been legally capable of committing the tort themselves:

> "[w]hen the mischief is accomplished, the conspiracy becomes important, as it affects that means and measure of redress; for the party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it. The significance of the conspiracy consists, therefore, in this: That it gives the person injured a remedy against parties not otherwise connected with the wrong. It is also significant as constituting [a] matter of aggravation, and as such tending to increase the plaintiff's recovery."

*Id.* at 443, 801 S.E.2d at 458 (quoting *Gosden v. Louis*, 116 Ohio App. 195, 687 N.E.2d 481, 497 (1996)). In relation to *Dunn*'s pronouncement that civil conspiracy is not, per se, a stand-alone claim, Ms. Sutphin's claim against Mr. Hopkins does not stand alone; it stands alongside her various tort claims and other wrongs as asserted against the *other* defendants: "a civil conspiracy 'enlarge[s] the pool of potential defendants from whom a plaintiff may recover damages and, possibly, an increase in the amount of those damages[.]" *Id.* (quoting *Gosden*, 687 N.E.2d at 498). *Jane Doe-1* memorialized the clarification by reincorporating *Dunn*'s syllabus point—but only in part—omitting that portion standing for the proposition that the civil conspiracy could not stand alone:

> "A civil conspiracy is . . . a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, in part, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

23

Syl. Pt. 4, *id*. We thus reject Mr. Hopkins' argument that the civil conspiracy claim against him must be dismissed for lack of an independent tort asserted against him and turn now to whether civil conspiracy was sufficiently pleaded against Mr. Hopkins.

Mr. Hopkins contends that the civil conspiracy asserted against him fails to meet notice pleading standards. *See Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.,* 244 W. Va. 508, 521, 854 S.E.2d 870, 883 (2020) ("[T]he West Virginia Rules of Civil Procedure establish the principle that a plaintiff pleading a claim for relief need only give general notice as to the nature of his or her claim."). Mr. Hopkins argues that he, as an employee of Lewis Chevrolet, cannot conspire with his corporate principal or employer under *Cook v. Heck's*, which states that "[a] 'conspiracy' requires at least two persons . . . and a corporation can act only through its agents or employees[,]" as such, "'[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.'" 176 W. Va. 368, 460, 342 S.E.2d 453 (1996) (citations omitted). Unlike *Heck's*—an appeal from a directed verdict—here we evaluate from an altogether different procedural posture and on a distinctive fact pattern where Mr. Hopkins *is* alleged to have acted in furtherance of a conspiracy for his individual advantage and not solely in his official capacity on behalf of Lewis Chevrolet. *See id.* ("There was, however, no evidence presented which showed that any of the defendants . . . acted in any capacity other than an official one.").

24

While Ms. Sutphin's amended complaint is not robust with allegations specific to Mr. Hopkins' role in the alleged conspiracy, like the ICA, we find it sufficient to meet notice pleading standards. Mr. Hopkins' role within Lewis Chevrolet, his familial relationship with the other defendants, and the benefits Ms. Sutphin alleges he was afforded as a result of those relationships all serve to give rise to inferences capable of supporting a civil conspiracy claim at the pleading stage of litigation. Accordingly, we find no error in the ICA's reinstatement of that claim against Mr. Hopkins.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the ICA's decision that reinstated the civil conspiracy claim against Mr. Hopkins. We vacate the portion that decided Ms. Sutphin's appeal relative to Ms. Abrams and Mrs. Hopkins for lack of subject matter jurisdiction and remand for further proceedings.

Affirmed, in part; vacated and remanded, in part.

25